CARROLL, DONALD, Judge.
This is an appeal from the final judgment entered upon a directed verdict for the defendant railroad company after the close of plaintiff’s case in each of two actions for wrongful death, arising out of a grade crossing collision in which the plaintiff-appellant’s husband and son were killed. She filed the first action as the widow of her husband and the second as the admin-istratrix of her son’s estate.
In each case the complaint alleged that the defendant railroad negligently operated a train against the truck in which the plaintiff’s husband and son were riding. The plaintiff in each case demanded trial by jury.
The two actions were tried together before a jury. The evidence at the trial established that the collision occurred at a crossing in the yards of a soap company. Three of the defendant’s tracks crossed the road, running north and south. There were several cars of the defendant parked on the easternmost track just north of the crossing, while the collision occurred on *646 the westernmost track. The plaintiff produced two eyewitnesses to the collision. One of them, Clarence S. Smith, an employee of the soap company, estimated that the train was doing at least 60 miles an hour and could have been going “plenty” faster than that. He said that after the collision the train went about three-quarters of a mile before coming to a stop. He did not hear the ringing of a bell. Another eyewitness, B. D. Carter, Jr., testified that the speed of the train just before the collision was about 70 miles an hour and that the train travelled “right at half a mile” before it came to a stop after the collision. He said that he heard the train blow a whistle at a highway crossing about 1,500 feet north of the crossing where the collision occurred, and that the next time he heard the whistle blow the train was just a few feet from the latter crossing. He admitted that he had given a statement about the accident to a representative of the defendant railroad, which statement was in some respects inconsistent with his testimony at the trial. The superintendent of the Jacksonville division of the defendant railroad testified that the train that struck the truck was a regularly scheduled through freight train and that the maximum speed as shown in the defendant’s time table was 65 miles an hour; and that the defendant’s special limit for a curve just north of the crossing was 60 miles an hour.
We have examined the record of the trial and find therein sufficient substantial and competent evidence from which the jury as reasonable men could have found the issues in favor of the plaintiff in each case.
At the close of the plaintiff’s case, the defendant moved for a directed verdict in each case. In granting the motions the trial judge said in part:
“Now in reviewing this testimony we must realize certain facts which are uncontradicted and not refuted by the witnesses for the plaintiff. First, that this particular crossing is not in a city, town, village or even a settlement; that it is in the nature of a private crossing, being solely for the access to this particular plant. Next, we must look at it in the vein that would naturally take it out of the category of some cases which Mr. Bedell cited, namely the speed of a train must be governed in congested areas, obstructions present, etc. Next, we must bring into account that this was a crossing having three railroad tracks on it: Next, we must bring into account the fact that on the first line adjacent and next to the plant, so to speak, that that particular line had a string of cars sitting on the siding and that the motorist, or the occupant of this truck came out of a gate which was within a matter of a few feet from the first track and according to the testimony were proceeding at a snail’s pace, so to speak, just were moving, according to the testimony; that they came up on this first track, which contained as I said the cars on the siding; they crossed over this track and from that track approximately thirty feet to where the impact was was an intervening track, meaning that they crossed over the first track, crossed over the second and got to the third track, and as they left the first track they had a view of approximately fifteen hundred feet both ways down the track. Uncontradicted testimony of the plaintiff’s witnesses is that the train was sounding all necessary and proper warning signals at the time — that is, the whistles were blowing. The reasonable inference from the testimony to be had from the plaintiff’s witnesses is that the train was sounding all necessary and proper warning signals at the time — that is, the whistles were blowing. The reasonable inference from the testimony to be had from the plaintiff’s witnesses is that the train was traveling approximately 60 miles per hour, even though one witness *647 stated it was going seventy, however, he at a previous sworn statement said he didn’t even see the train, so we must bring that into account.
“Now, the way I view it, gentlemen, as these two occupants of this truck approached that track they knew they were approaching a crossing having three lines, that is three tracks, they were people who lived in that community, they were people who were very familiar with the crossing, they were not foreigners to that particular spot of territory.
“Gentlemen, as I view the case solely from the standpoint of the plaintiff the train was traveling at its usual rate of speed, the train was giving sufficient and ample warning as trains are supposed to do, and had the driver of that car given any slight or any type of due care [sic] to the safety of he and his occupant he could have seen the train, could have heard that train, and could have taken the proper steps to protect themselves. * * *
“I don’t consider the fact the cars parked on that siding was such an obstruction that created any negligence on the part of the railroad which would have brought it under the comparative negligence statute.”
Having read the testimony in the record and the judge’s statement above-quoted, we are convinced that the judge in granting the motion for a directed verdict in each case invaded the province of the jury, the rightful trier of the facts. As revealed in his statement, not only did the judge obviously weigh the evidence, in much the same way as the jury might be expected to do, but he discredited the testimony of one .of the chief witnesses for the plaintiff because of a prior inconsistent statement.
It is our opinion, therefore, that the motion for a directed verdict should not have been granted in either case and that the judgments for the defendant in the two cases should be and they are reversed, and each case is remanded for a new trial by jury.
Reversed.
WIGGINTON, J, concurs