306 So.2d 575 (1975)
Preston E. McARTHUR, Sr., Individually, and As Administrator of the Estate of Preston E. McArthur, Jr., Deceased, Appellant,
v.
ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellee.
No. U-168.
District Court of Appeal of Florida, First District.
January 8, 1975.
Rehearing Denied February 10, 1975.
*576 Wilmer H. Mitchell of Holsberry, Emmanuel, Sheppard, Mitchell & Condon, Pensacola, for appellant.
Robert P. Gaines of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellee.
BOYER, Acting Chief Judge.
This appeal is from a final judgment entered pursuant to a jury verdict in favor of the defendant, appellee here, in a wrongful death action filed by appellant arising out of the death of appellant's son in a highway grade-crossing collision. The appellee has cross-appealed, assigning as error the denial by the trial judge of its motion for summary judgment based upon its claim that the statute of limitations barred this action.
Appellant's son, Preston E. McArthur, Jr., was killed instantly when an automobile in which he was riding was involved in a collision with appellee's train. The accident occurred at a crossing in Escambia County where appellee's tracks cross U.S. Alternate 90, locally known as Nine Mile Road. The railroad tracks run in a generally north-south direction and the highway in a generally east-west direction. The highway at the point of the crossing is level and straight and is divided by a grass median. On each side of the highway is dense foliage. At the time of the subject accident the train was proceeding north while the automobile involved in the collision was proceeding easterly. The crossing was equipped with electric warning lights and a bell. The evidence was conflicting as to whether the decedent was the driver of the vehicle or a passenger therein.
The accident occurred on April 12, 1970 and the complaint in this action was filed on April 11, 1972 at 4:57 p.m. Service of process was effected upon appellee some two weeks thereafter.
We first consider appellee's contention that the action was barred by the statute of limitations.
Florida Statute § 95.11(6) provides that an action arising upon account of an act causing a wrongful death shall be commenced within two years after accrual of the cause of action.
Rule 1.050 RCP provides as follows:
"Every action of a civil nature shall be deemed commenced when the complaint or petition is filed except that ancillary proceedings shall be deemed commenced when the writ is issued or the pleading setting forth the claim of the party initiating the action is filed."
*577 Rule 1.070(a) RCP provides:
"Upon the commencement of the action summons or other process authorized by law shall be issued forthwith by the clerk or judge under his signature and the seal of the court and delivered for service without praecipe." (Emphasis added)
Appellee argues that inasmuch as service was not effected until some two weeks after the filing of the complaint the action should not be deemed to have been commenced until service was effected and that therefore the statute of limitations had run, citing several opinions of federal courts. (Hixson v. Highsmith, 147 F. Supp. 801 (D.C.Tenn. 1957); Skilling v. Funk Aircraft Company, 173 F. Supp. 939 (D.C.Mo. 1969) and Morman v. Standard Oil Company, Division of American Oil Company, 263 F. Supp. 911 (D.C.S.Dak. 1967)) Such is not the law of the State of Florida.
The rule promulgated by our Supreme Court clearly and distinctly provides that an action is commenced when the complaint is filed. (See Hunt v. Ganaway, Fla.App. 1st 1965, 180 So.2d 495) In bygone days it was necessary for the plaintiff to file a motion or praecipe for the issuance of summons: However, the present rule specifically provides that the summons be issued by the clerk or judge without praecipe. We can conceive of many valid reasons for the delay in the issuance of the summons and numerous other valid reasons for delaying the placing thereof into the hands of the sheriff for service. Should the clerk or judge, upon whom the rule places the responsibility for the issuance of the summons, be delayed or even negligent such may not be visited upon the complainant.
We are not here concerned with a case wherein the plaintiff intentionally interfered with the issuance of summons or the service thereof. Whether such circumstances would have any affect upon the running of a statute of limitations we will decide when such facts are presented for our consideration. They do not exist here.
We turn now to appellant's points relative to the instructions of the trial judge given to the jury.
As above recited, one of the issues at trial was whether the decedent was the driver or a passenger. The case was tried under the doctrine of comparative negligence. (Hoffman v. Jones, Sup.Ct.Fla. 1973, 280 So.2d 431) As part of his charge to the jury the trial judge, over vigorous objections by appellant's counsel, gave the following instruction:
"Section 317.454 of the Florida Statutes provides in sum that no person operating any motor vehicle on a public road shall cross or attempt to cross, at a point designated by the Road Department as a dangerous crossing, any railroad track intersecting the road at grade, without first bringing the motor vehicle to a full stop at a certain distance from the nearest railroad track, and shall then look in both directions along the track, and listen for the approach of any train, thereon; except certain exceptions, where you have a railroad man or a flag man, or the lights and so forth.
"Violation of a traffic regulation prescribed by Statute is evidence of negligence. It is not, however, conclusive evidence of negligence. If you find that a person alleged to have been negligent, violated such a traffic regulation, you may consider that fact, together with the other facts and circumstances, in determining whether such person was negligent, himself."
During deliberations the jury returned to the courtroom and propounded a written question, which gave rise to the following additional statement or charge by the trial judge:
"Ladies and gentleman, you inquired by in writing, as I required you to do, and I will read your question. `By Florida law, is a motorist required to stop at all *578 railroad crossings, regardless of warning signals installed? Example: Flagman present,' and you had yes or no, there, to check the blank, apparently; `lights installed, yes or no; railroad signs only, yes or no.' Well, in answer to the general question, `Is a motorist required to stop at all railroad crossings, regardless of signals installed?' The answer is, no, he is not required to stop at all railroad crossings, regardless of signals installed. `Flagman present?' The answer is yes, if the flagman is flagging traffic, to stop traffic; that is the important thing. Now, that is more complete than the mere question asked. `Lights installed?' He does not have to stop where lights are installed, unless there are lights a flashing, and then he must stop and use  and look and make sure the coast is clear, and then proceed with caution. The same thing is true with a railroad sign, only. He does not have to stop, but he must use due care in crossing the railroad, where there is a railroad sign  use date care. Does that generally answer your questions. You think so; then, you may step outside to the juryroom, please."
Appellant urges that the giving of the foregoing instructions was error. We agree.
First, there was no evidence that the road department had designated the crossing at which the accident occurred as a dangerous crossing, which was the very foundation of F.S. § 317.454. Appellee argues that the situation is controlled by McMillan v. Nelson, Sup.Ct.Fla. 1942, 149 Fla. 334, 5 So.2d 867. However the point there involved was quite different from the point here. In the McMillan case the defendant insisted that it was incumbent upon the plaintiff to prove that a "stop" sign had been erected by authority of the State Road Department in order for the defendant to be held responsible for "running a stop sign". Sub judice we are not interested in whether or not any lights or signs were erected by proper authority. The point here is that the statute which gave rise to the objectionable charge specifically provided that it was applicable only to crossings designed by the road department as a dangerous crossing. To have justified the giving of that charge it was necessary to have proven the foundation therefor.
The response to the written question propounded by the jury only aggravated the situation. At the conclusion of that charge, the jury had before it two contradictory charges on the same point. Such could have only led to confusion in the collective minds of the jury. (See Casazza v. Emerson, Fla.App. 1st 1967, 194 So.2d 643)
When a trial judge gives an erroneous instruction in the Court's charge to the jury and later, while the jury is yet deliberating, desires to correct the error by giving a correct instruction he should explain the error to the jury and withdraw the erroneous instruction, substituting the correct instruction in lien thereof. (See Coleman v. State, Sup.Ct.Fla. 1879, 17 Fla. 206) It is vital that the trial judge make clear to the jury that he is striking or withdrawing the erroneous instruction and that it is withdrawn from their consideration.
However, although we find that the giving of the challenged instructions was error, we further find that the error was harmless. As already mentioned, the evidence was conflicting as to whether the decedent was a passenger or the driver of the vehicle involved in the accident. If he was a passenger then, of course, the challenged instructions were inapplicable and the jury was appropriately so instructed. On the other hand, if the jury found the decedent to have been the driver then, in view of the fact that the case was tried under the doctrine of comparative negligence, the above mentioned instructions could only have had application to the extent or degree of his negligence. The verdict rendered by the jury reveals that the *579 jury arrived at its conclusion not because of any negligence on the part of the decedent but because it found an absence of negligence on the part of the railroad. Three forms of verdict were submitted to the jury: It has a choice of a form which found for the plaintiff and awarded full damages; one that had blanks for the full damages and for the percentage of negligence of the railroad and the decedent, and the third form which found for the railroad. The jury was instructed that if the greater weight of the evidence did not support the claim of the plaintiff then its verdict should be for the railroad. It was further instructed that if the greater weight of the evidence supported the claim of the plaintiff then it should consider the defense of negligence on the part of the decedent and that it would thereupon be given a special form of verdict to determine the damages and the negligence of the decedent and the railroad. The procedure of submitting the several forms of verdict and the forms thereof was not challenged by appellant and is not an issue on appeal. There was no indication by any question from the jury that it had any doubt as to which verdict form it was to use in the event it found no negligence on the part of the railroad. The form which was used by the jury was appropriate for the latter finding and each juror, when polled, agreed that the verdict returned was his verdict. It is apparent therefore that the jury simply found the railroad to be free of fault. Under such circumstances the giving of the erroneous instructions above mentioned, though error, was harmless.
Incident to pretrial discovery the defendant responded to certain interrogatories propounded by the plaintiff, the first interrogatory and answer being as follows:
"1. Please state the history of wrecks at this crossing so far as is shown on the records of your company and so far as it is known to your company, its attorneys or representatives or agents. For each wreck please state the date of the wreck, the time of day, the weather condition, the type occurrence (what vehicles and trains were involved) the number killed and the number involved and the direction of travel of the train and vehicles.
"ANSWER: The records of the company do not show all of the collisions that have occurred at this crossing because of the system of records destruction used by the defendant. There are no records of the collisions that occurred prior to 1957, and records of only some of the collisions subsequent to 1957 are still maintained. According to the records that are currently maintained, the following information is furnished:

 VEHICLE TRAIN
 DATE TIME DIRECTION DIRECTION KILLED INJURED
 4/9/57 6:25 A.M. Truck North 2 0
 Fair Unknown
 5/2/59 1:15 P.M. Auto South 1 1
 Fair Unknown
 1/24/63 7:40 A.M. Truck North Unknown Unknown
 Unknown Unknown
 11/23/66 8:40 A.M. Auto South 0 1
 Clear West
 6/20/66 7:35 A.M. Truck North Unknown Unknown
 Cloudy Unknown
 7/27/68 4:20 P.M. Auto South 3 0
 Clear West
 4/12/70 7:50 P.M. Auto North 2 1"
 Clear East

*580 During the trial appellant sought to introduce into evidence the above quoted interrogatory and answer to which the trial judge sustained appellee's objection.
Appellant cites Alexander v. Florida East Coast Ry. Co., Fla.App. 3rd 1969, 218 So.2d 478, for the proposition that prior accidents or injuries under substantially similar circumstances may be admitted in negligence actions. Since the briefs were filed in this case our Supreme Court has decided Perret v. Seaboard Coast Line Railroad Company, Sup.Ct.Fla. 1974, 299 So.2d 590 and Friddle v. Seaboard Coast Line Railroad Company, Sup.Ct.Fla. 1974, 306 So.2d 97, opinion filed October 16, 1974, Case No. 45,213. In the Perret case Justice McCain, speaking for the court, discussed at length the principles here involved and concluded that under the circumstances of that case the trial judge erred in excluding evidence of a prior accident which occurred under similar circumstances at the railroad crossing involved in that case, quoting the general rule as to the admissibility of evidence of prior accidents to prove the existence of a dangerous condition as same is set forth in 29 Am.Jur.2d § 306, as follows:
"`Subject to the general requirement of similarity of conditions, reasonable proximity in time, avoidance of confusion of issues, the courts have generally recognized that evidence of prior similar accidents at the same place as that of the accident in suit, or evidence of prior similar injuries resulting from the same appliance as the injury in suit, is admissible for the purpose of showing the existence of dangerous or defective premises or appliances.'" (299 So.2d at page 592)
However, the court cautioned:
"Much care must be exercised in the application of this rule inasmuch as the adoption of a rule of such broad admissibility would be tantamount to permitting the proof of negligence vel non by a showing of similar prior accidents. This could not be acceptable. Thus, safeguards must be maintained." (299 So.2d at page 592)
The problem which we experience with the appellant's point sub judice is that our examination of the record reveals that although the trial judge repeatedly asked what was sought to be proved by the proffered interrogatory and answer thereto, no satisfactory answer was ever given. Further, an examination of the answer to the interrogatory readily reveals that it leaves much to be desired. There is nothing there to indicate the prime requirement, similarity of conditions. As above noted, the highway at the point of the subject crossing is divided by a grass median strip and there is no evidence in the record to demonstrate that the conditions on the northerly portion (westbound lanes) are similar to the conditions on the southerly portions (eastbound lanes). The record reveals that the trial judge did not refuse to permit evidence of prior accidents at the same crossing which was the point ruled upon by the Supreme Court in each of the last above cited cases. He only sustained an objection to the interrogatory and answer thereto as not being sufficient in and of themselves to meet the test of admissibility. Indeed, the record reveals that on at least two occasions the trial judge suggested to the plaintiff's attorney that perhaps he should call a witness to testify as to such matters but apparently no such witness was available. At no time was there any attempt to introduce any particular part of the proffered answer to interrogatory. It was submitted on an "all or none" basis.
We agree with the trial judge that the above quoted interrogatory and answer thereto were not, without proper explanatory evidence as a predicate, admissible.
Appellant having failed to demonstrate prejudicial error, the judgment appealed is
Affirmed.
McCORD, J., and SPECTOR, SAM, Retired, Associate Judge, concur.