369 So.2d 1007 (1979)
ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY and Robert Martin, Appellants,
v.
Betty P. WHITE, As Administratrix of the Estate of Roy Kirk White, Deceased, Appellee.
No. HH-152.
District Court of Appeal of Florida, First District.
April 19, 1979.
*1008 Robert P. Gaines, of Beggs & Lane, Pensacola, for appellants.
Louis K. Rosenbloum and Lefferts L. Mabie, Jr., of Levin, Warfield, Middlebrooks, Mabie, Rosenbloum & Magie, and Norton Bond, Pensacola, for appellee.
MELVIN, Judge.
The appellant, the St. Louis-San Francisco Railway Company (the Railroad), takes this appeal from an adverse final judgment awarding, inter alia, the four minor children of the decedent, White, who perished in a grade crossing accident with one of the Railroad's trains, damages totaling $280,000. As grounds for reversal, the Railroad urges the following six points: 1) That evidence of the accident site speed limit adopted by the Railroad should not have been admitted over objection; 2) that the court's instruction that a violation of Section 351.03 constituted negligence was error; 3) that the court's instruction that violation of an industry standard was evidence of negligence was error; 4) that exclusion of the last sentence of Section 316.171, Florida Statutes, in the court's instructions to the jury on statutory crossing warning requirements was error; 5) that the damages awarded were so grossly excessive as to require a new trial; and 6) that the trial court erred in denying the Railroad's motion for directed verdict. For the reasons stated we find appellant's arguments to be unpersuasive and affirm.
This crossing accident occurred at the intersection of Meadows Road and the Railroad's tracks in northern Escambia County on June 16, 1974. Meadows Road is a rural, two-lane road running in an east/west direction at the crossing site, while the Railroad's single set of tracks run generally in a north/south direction and cross the road at approximately 90 degrees.
On the day of the fatal accident, White's truck, which was moving from west to east on Meadows Road at approximately 45 miles per hour, was struck by the Railroad's train, which was running from north to south. Although it was still daylight and the weather was apparently not a contributing *1009 factor in the accident, visibility, or the lack of it, was a significant factor leading to the collision. The photographs and survey evidence introduced show that as White approached the crossing, his field of vision of the northern section of the track and, thus, of the approaching train was almost totally obstructed by the heavy woods and bushes contained within the northwest quadrant of the intersection. The same trees and bushes had the effect of camouflaging the western section of Meadows Road and White's approaching pickup truck from the view of the train's crew. Indeed, the evidence reveals that neither White nor the train's crew could have had an unobstructed view of any significant portion, respectively, of the track or road until each was within 50 to 25 feet of the crossing.
Approaching the crossing from the west, there is a standard Department of Transportation railroad advance warning sign some five feet to the right of the road and 222 feet west of the tracks. This sign is simply a 36-inch yellow disc marked with a black X flanked by a black letter R to the left and right. Five feet beyond and 20 feet to the right of the DOT sign there is a rectangular warning sign of the type described in Section 316.171. The surface of this sign, however, is so obliterated by age and rust that its warning is incomprehensible. Beyond this sign, there is nothing: No lights, gates or even the standard black and white crossbuck warning sign to mark the location of the tracks.
The court denied the Railroad's motion for directed verdict and submitted the case to the jury, which found the Railroad 70% negligent, White 30% negligent and damages to White's four minor children at $100,000 each. Accordingly, the court entered a judgment for $280,000 against the Railroad.
At trial, the plaintiff introduced a mechanical speed tape from one of the train's three engines that indicated that the train was running at 40 miles per hour immediately prior to the application of its emergency brakes. This evidence was contradicted by the testimony of the train's engineer that he was only going 32 or 33 miles per hour. Over the objection of the Railroad, plaintiff was also allowed to introduce an operating rule of the Railroad specifying a speed of no more than 35 miles per hour for the crossing area. The Railroad urges that its speed limit was immaterial and, therefore, improperly admitted into evidence.
A jury question on negligence is presented when there is evidence that the train involved in a crossing accident was operating at a speed in excess of its speed limit. In Helman v. Seaboard Coast Line R. Co., 349 So.2d 1187 (Fla. 1977), the defendant railroad was found to have been exceeding its own 20 mile per hour speed regulation by 5 miles per hour at the time of the crossing accident. At trial, the issue of the train's speed was presented to the jury, which found for the plaintiff Helman. On appeal to the District Court of Appeal, the trial court was reversed, the District Court finding it "... abundantly clear that the excessive speed was not the proximate cause of the collision." (Seaboard Coast Line Railroad Co. v. Helman, 330 So.2d 761 at 765). Finding that the District Court had improperly reweighed and reevaluated the evidence, our Supreme Court reversed stating:
"... Because there was some competent evidence to support the jury verdict that respondents were negligent in traveling at an excessive speed and in failing to sound their whistle when required, the jury was concomitantly imbued with the function of deciding whether such negligence was a proximate cause of the injury... ." (349 So.2d at 1190)
In the instant case, there was competent evidence presented to the jury from which it could have found that the railroad was exceeding its own speed limit by at least five miles per hour. Therefore, the Railroad speed limit was properly presented to the jury. See also Martin v. Favorato, 79 So.2d 780 (Fla. 1955); Leslie v. Atlantic Coast Line Railroad, 103 So.2d 645 (Fla. 1st DCA 1958); and Seaboard Coast Line R. Co. *1010 v. Buchman, 358 So.2d 836 (Fla. 2d DCA 1978).
In charging the jury in this case, the trial court stated that if the jury found that the Railroad had violated Section 351.03, Florida Statutes (requirement to place crossbucks) such violation was negligence per se. The court went on to instruct that if the jury found such negligence to exist, they must then determine whether such negligence was the legal cause of the injury. The Railroad urges the giving of this instruction over its objection as reversible error. We disagree.
In deJesus v. Seaboard Coast Line Railroad Company, 281 So.2d 198 (Fla. 1973), the Court considered the trial court's instruction that violation of a railroad safety statute was negligence per se. Specifically, the trial court had instructed that a violation of Section 357.08, Florida Statutes, which required, during the hours of darkness, the marking of trains blocking public roads by the use of a lighted fuse or other visual warning device, was negligence. In finding for deJesus, the Supreme Court upheld the trial court's instruction finding that a violation of any statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury is negligence per se, although not necessarily actionable negligence.
In Duncan v. Monark Boat Company, Inc., 330 So.2d 843 (Fla. 1st DCA 1976), this Court held that violation of Section 371.60, Florida Statutes (boat safety statute) was negligence per se. See also Concord Florida, Inc. v. Lewin, 341 So.2d 242 (Fla. 3d DCA 1977), cert. den. 348 So.2d 946 (Fla. 1977) (affirming the giving of a negligence per se instruction with respect to a violation of the Dade County Fire Prevention and Safety Code) and Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978) (finding error in refusing to give instruction that violation of applicable Federal Aviation Administration regulation was negligence per se).
Death may not be left, without any required warning, to stalk unfettered a railroad-highway intersection.
We hold that Section 351.03, Florida Statutes, was enacted to protect the motoring public from collisions with trains by requiring the placement of crossbucks to warn of the existence of, and to locate the railroad's tracks and that violation of such statute is negligence per se. deJesus, supra.
Also while instructing the jury, the court stated:
"... violation of a standard prescribed by an industry is evidence of negligence. It is not, however, conclusive evidence of negligence. If you find that the railroad violated such standards, you may consider that fact together with the other facts and circumstances in determining whether such person was negligent."
As stated earlier, there was no railroad-supplied, crossing protection equipment at the site of this fatal accident, the sole warning to the public of this crossing being the yellow D.O.T. advance warning signs. The industry standard referred to in the court's instruction recommended as mandatory the placement of railroad-highway crossing signs (crossbuck) at all crossings.[1]
*1011 In our earlier opinion in St. Louis-San Francisco Railway Company v. Burlison, 262 So.2d 280 (Fla.App. 1972), cert. den. 266 So.2d 350 (Fla. 1972), this Court considered and rejected the railroad's argument regarding the admissibility of industry standards, stating:
"The evidence adduced concerning recommended signalization and defendant's failure to provide the recommended signalization is, standing alone, sufficient evidence upon which the jury's finding of negligence can rest. We do not hold that failure to conform one's own practices with those generally recognized by an industry safety council or committee is negligence per se. We hold merely that evidence of noncompliance can be considered by the jury which may, but need not, find negligence as a result of the failure to follow a generally recognized safety rule.
* * * * * *
We can assume that in promulgating the safety rule in question, the American Association of Railroads consulted with leading experts in the field of railroad highways crossings and garnered from their facts and recommendations an acceptable standard of conduct tending to preserve the safety of the highway using public, evolving standards with which an operating railroad could conform without unduly restricting its operational or fiscal capacities." (262 So.2d at 281)
In Florida Freight Terminals, Inc. v. Cabanas, supra, the District Court of Appeal, Third District, held it reversible error for the trial court to refuse to instruct that violation of an applicable Federal Aviation Administration (FAA) regulation was negligence per se. The particular regulation made the pilot in command responsible for the tying-down of all cargo to eliminate the possibility of its shifting. Evidence presented at trial indicated that the plane's load of Christmas trees had shifted to the rear, upon takeoff, causing the plane to crash. Florida Freight requested that the jury be instructed that violation of the FAA regulation was negligence per se; however, the court denied the request and, instead, instructed that violation of the regulation was non-conclusive evidence of negligence. Extending the rationale of deJesus v. Seaboard Coast Line Railroad Company, supra, and Sloan v. Coit International, Inc., 292 So.2d 15 (Fla. 1974), that it is negligence per se to violate a statute designed to protect a particular class of persons from their inability to protect themselves or to violate a statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury, the District Court held that the jury should not have been at liberty to decide that violation of the regulation was not negligence and reversed because the trial court refused to give the per se instruction.
We need not go as far as Florida Freight. The requirement to place crossbucks is established by statute and by industry standard. We have already held that the court may instruct that a violation of the statute (Section 351.03) is negligence per se. We have also held that violation of an industry standard is admissible as evidence of negligence. St. Louis-San Francisco Railway Company v. Burlison, supra. We see no detriment to the appellant by the trial court instructing that violation of an industry standard is evidence of negligence. Conversely, it would appear proper to instruct that compliance with a standard is non-conclusive evidence of freedom of liability. Accordingly, we hold that it was not error to instruct that a violation of an industry safety standard is non-conclusive evidence of negligence.[2]
*1012 Also, while instructing the jury in this case, the trial court read the following portion of Section 351.03, Florida Statutes:
"Every railroad company shall exercise reasonable care for the safety of motorists whenever its track crosses a highway and shall put up large signboards at or near said crossing with the following inscription in large letters on both sides of the boards: LOOK OUT FOR THE CARS! ... All motorists approaching a railroad crossing shall exercise reasonable care for their own safety and that of their passengers and for the safety of railroad train crews operating trains across such crossings."
A proviso of Section 351.03, Florida Statutes, not read to the jury stated:
"This requirement for posting signs shall not apply to railroad crossings having signs as required by s. 316.171."
Section 316.171, Florida Statutes, states:
"Signs at dangerous crossings. Every railroad company operating or leasing any track intersecting a public road at grade and falling within the purview of ss. 316.158 and 316.159 shall place and maintain a suitable signboard on each side of the track or tracks on the right side of the highway not less than 10 feet from the ground and 40 inches by 50 inches, 200 feet from the crossing, which said board shall be painted with black lettering and white background with the following inscription thereon: STOP  RAILROAD CROSSING  FLORIDA LAW. For use at night the signboard shall be equipped with a suitable mirror reflector of such size, color, and description as may be approved by the department of transportation for use at railroad crossings, so designated that same will reflect the rays of a motor vehicle headlight. Where railroad warnings signs have already been placed, or shall hereafter be placed, at any railroad crossing by the department of transportation, the railroad companies shall not be required to erect or maintain additional signs or reflectors at such crossings." (Emphasis added)
The Railroad, argues, unpersuasively, that the trial court erred in giving the instruction on Section 351.03, Florida Statutes, without including the proviso referring to Section 316.171, Florida Statutes, urging that, because the D.O.T. had erected advance warning signs at the accident crossing, in the instant case, it (pursuant to the above, underlined sentence of Section 316.171) was not liable to erect any warning signs at the crossing.
Section 316.158, Florida Statutes, authorizes the Department of Transportation to designate particularly dangerous highway grade crossings for the purpose of erecting traffic control devices. Section 316.171, Florida Statutes, requires a railroad to erect a special signboard at such D.O.T.-declared, dangerous crossings, unless the D.O.T. has already placed railroad warning signs at such crossings.
Had this particular crossing been designated as a dangerous crossing pursuant to Section 316.171, the Department of Transportation could have placed its own railroad warning signs at the actual site of the crossing, as well as the yellow, circular advanced warning signs. Had the D.O.T. placed such crossing site warning signs, the crossbucks required by Section 351.03 would be rendered unnecessarily duplicative and the railroad would have been relieved of its duty to place the crossbucks by the operation of the above, emphasized sentence of Section 316.171. If the crossing in this case had been declared dangerous pursuant to Section 316.171 and the D.O.T. had not placed warning signs at the crossing site the Railroad would still have been under a statutory duty to place crossbucks pursuant to Section 351.03.
*1013 However, in the instant case it was stipulated to by the parties and testimony was heard from an expert witness of the D.O.T. to the effect that not only had the instant crossing not been declared dangerous but, indeed, at the time of trial, no crossing in the State of Florida had been declared dangerous pursuant to Section 316.158, Florida Statutes.
Thus, the D.O.T., while it did place advance warning signs some 222 feet in advance of the crossing, was not required to, and did not, place railroad warning signs at the actual crossing. It remained the Railroad's responsibility to mark the crossing site with crossbucks as required by Section 351.03 and it failed to do so. Accordingly, its reliance upon Section 316.171 is totally without merit. See McArthur v. St. Louis-San Francisco Railroad Co., 306 So.2d 575 (Fla.1st DCA 1975), cert. den. 316 So.2d 293 (Fla. 1975).
Appellant's point that the award of $280,000 to the decedent's four minor children for his wrongful death is excessive is without merit. Bould v. Touchette, 349 So.2d 1181 (Fla. 1977); City of Miami v. Jiminez, 266 So.2d 46 (Fla.3d DCA 1972).
Lastly, the Railroad's argument that the trial court erred in not granting its motion for directed verdict is without merit. Seaboard Coast Line R. Co. v. Buchman, supra.
Appellee's cross-assignment of error has been considered and is, in our opinion, without merit.
AFFIRMED.
BOOTH, J., concurs.
ROBERT P. SMITH, Acting C.J., specially concurs.
ROBERT P. SMITH, Acting Chief Judge, specially concurring:
I concur in the judgment of affirmance and in the Court's disposition of all issues except the propriety of charging the trial jury that any violation by the railroad of an "industry standard" is "evidence of negligence." Such a charge is an argumentative comment on the evidence, which in Florida is the function of trial counsel, not that of the trial judge. Although I cannot regard the charge as harmful in the particular circumstances of this case, it was error nonetheless; and I deplore our reversion to the discredited and abandoned practice of bestowing judicial favor on certain evidence by charges to the jury. For the same reason I disagree with the majority opinion's decision that:
Conversely, it would appear proper to instruct that compliance with a standard is non-conclusive evidence of freedom of liability.
This is not to say that violation of an industry standard is not evidence of negligence. Of course it is. St. Louis-San Francisco Railway Co. v. Burlison, 262 So.2d 280 (Fla.1st DCA 1972, cert. den., 266 So.2d 350 (Fla. 1972). But that is no reason for the trial judge to sing a duet with claimant's lawyer. Nor, if there is evidence that the railroad complied with an industry safety standard, is that an occasion for the trial judge to give an "on the other hand" charge distinguishing that evidence from all the evidence from which the jury is to infer negligence or the lack of it. Evidence of an industry standard is simply evidence, and it neither requires nor justifies judicial comment. As the railroad's counsel said in objecting to the charge given in this case,
Jumping off a roof is evidence of negligence on the part of the jumper, too, but the Court wouldn't give any instructions [on] that fact. This is nothing more than common known [sic; comment on] evidence.
And as I wrote in an analogous case,
But while any jury will likely infer negligence when a driver runs down a pedestrian, it is hardly thought necessary or appropriate  at least, not yet  that the trial judge should incite such a finding on a jury issue by a res ipsa charge.
Dayton Tire and Rubber Co. v. Davis, 348 So.2d 575, 589-90 (Fla. 1st DCA 1977) (dissenting opinion), reversed, 358 So.2d 1339 (Fla. 1978).
For decades our Supreme Court has disapproved judicial comment on the evidence. *1014 Lithgow Funeral Centers v. Loftin, 60 So.2d 745 (Fla. 1952); Florida East Coast Ry. Co. v. Carter, 67 Fla. 335, 65 So. 254 (1914); Williams v. Dickenson, 28 Fla. 90, 9 So. 847 (1891). In 1967 the Court strengthened that commitment by generally approving "the theory and technique of charging civil juries as recommended by the Committee [on Standard Jury Instructions, Civil] and embodied in its proposed instructions." In the matter of the use by the trial courts of the Standard Jury Instructions, 198 So.2d 319 (Fla. 1967); Fla.Std. Jury Instr. (Civil) at v (order of April 19, 1967). The central "theory and technique" so approved was:
[T]he trial judge will define negligence for the jury as briefly and as generally as accuracy permits, not with a purpose to banish from the case the necessary elaborations, paraphrases and particulars of negligence, but rather to rely on the jury, assisted by the lawyers' arguments, to deduce from the general definition the specific application appropriate to the case.
......
One of the unfortunate roles assumed by trial judges in the past is that of advocating both sides of the case by reading to the jury a series of argumentative charges favoring one side of the case and then, "on the other hand," reading another series of equally argumentative charges favoring the other side of the case. It has been the Committee's purpose to omit such argumentative charges and to remove all advocacy from the charge... . [Fla.Std. Jury Instr. (Civ.) at xix, xx.]
Thus since 1967 trial judges have been discouraged from charging juries on negligence subprinciples which serve to decide legal issues confronting trial and appellate courts, but which in jury charges produce interminable charge conferences, overemphasis of certain evidence or theories, confusion wrought by "on the other hand" charges, and appeals, but nothing of substantial value. See Dayton, 348 So.2d at 591.
I should be among the first to say that the "theory and technique" of the standard instructions, and the recommended charge themselves, are not sacrosanct. By judicial decisions the law moves interstitially, and uncritical adherence to the standard charges may tend to freeze the law's development in the stage where the committee found it when writing the charges. The Supreme Court made allowance for necessary growth in the law when it provided:
[T]he Court recognizes that no approval of the forms by the Court could relieve the trial judge of his responsibility under the law properly and correctly to charge the jury in each case as it comes before him. This order is not to be construed as any intrusion on that responsibility of the trial judges. [198 So.2d at 319; Fla.Std. Jury Instr. (Civ.) at v.]
It was therefore not apostasy for the trial judge, stating reasons as he did,[1] to consider it appropriate to charge this jury that violation of an industry standard is "evidence of negligence." I nevertheless consider the reasons inadequate and the charge erroneous.
The charge given was an adaptation of standard charge 4.11, which reads:
Violations of a traffic regulation prescribed by [statute] [ordinance] is evidence of negligence. It is not, however, conclusive evidence of negligence. If you find that a person alleged to have been negligent violated such a traffic regulation, you may consider that fact, together with the other facts and circumstances, in determining whether such person was negligent.
*1015 Charge 4.11, pertaining to traffic regulations, is of course to be distinguished from standard charge 4.9, which characterizes as "negligence" any violation of a nontraffic penal statute. As the court today holds, following deJesus v. Seaboard Coast Line Railroad Co., 281 So.2d 198 (Fla. 1973), a railroad's violation of a statute requiring crossbuck warning signs is "negligence," and charge 4.9 is appropriate. The committee commented, in recommending charge 4.9,
When the legislative authority enacts such a statute or ordinance, it thereby prescribes a minimum standard of reasonable care to which every reasonably careful person will adhere. The jury is not at liberty to determine that the violation of such a standard is not negligence. [See Richardson v. Fountain, 154 So.2d 709 (Fla.2d DCA 1963), cert. den., 157 So.2d 818 (1963).]
Standard charge 4.11, pertaining to traffic regulations prescribed by statute or ordinance, and which the trial judge here adapted to standards of care prescribed by industrial organizations, does not rest on so firm a public policy as charge 4.9, and so does not prescribe an unbending standard of care. Therefore evidence of such a violation is characterized as "evidence of negligence," but "not ... conclusive evidence of negligence." Even such a limited comment as this, given after reading an ofttimes long series of traffic statutes or ordinances, is in my opinion problematic, lending judicial emphasis to nonexclusive standards of reasonable care which the jury is not obliged to apply to the exclusion of other standards suggested by the evidence, the argument, and the jurors' common sense.[2] The justification for charge 4.11 is that pre-1967 decisions on which it was based suggested its necessity, and that the jury must be told something concerning the effect of statutory or ordinance standards to which the jury may otherwise absolutely defer, especially if they are intoned in the charge by the trial judge. In my opinion the chief value of charge 4.11, when employed to explain the effect of a statute or ordinance, or the effect of a regulation,[3] lies in its advice that the standard, of which the jury must be advised, is not conclusive. To the extent that the charge suggests that such a standard is more important than "reasonable care under the circumstances," I regard it as an unfortunate, if unavoidable, intrusion on the function of counsel and the jury.
Therein lies my aversion to the court's extended application, in this case, of charge 4.11. The trial judge does not read industry standards to the jury, nor does the judge read back other evidence submitted for the jury's consideration. Therefore there is no need to cancel or qualify the seemingly authoritative effect of the judge's reading of a statute. If standards prescribed by traffic statutes or ordinances are thought to occupy some middle ground of importance, greater than those standards which are suggested by the evidence and argument but lesser than standards to which charge 4.9 applies, there is no reason, in my opinion, to assign "industry standards" to that favored middle ground. To the extent that "industry standards" are prescribed by government, charges 4.9 and 4.11 permit judicial comment because the charging judge is, for the jury, the source of applicable law. But standards prescribed by voluntary industrial organizations are not law, and endorsement of them should not be found in the mouth of a trial judge. A charge such as this has none of the justifications of 4.11 but has all of its disadvantages.
In extending charge 4.11 to cover "industry standards," I fear the majority are misled by the discrete written form in which *1016 the railroad crossbuck standard was evidenced in this particular case. Ante p. 1010 fn. 1. Certainly the industry's crossbuck standard is not made equivalent to a statute or ordinance by the fact that it is written. Particular customs or standards of reasonable care in organized commercial activity, be it railroading, manufacturing, medical practice, or some other, are not always proved by so handy a document as Bulletin No. 7 of the Association of American Railroads. Standards are subject also to proof by expert witnesses. E.g., Ashburn v. Fox, 233 So.2d 840 (Fla. 3d DCA 1970); Millar v. Tropical Gables Corp., 99 So.2d 589 (Fla.3d DCA 1958). I think it no more justifiable for a trial judge to comment favorably on a vocational standard evidenced in writing than to comment on a standard shown by opinion testimony or other competent evidence. If it is the Court's purpose to restrict the charge to standards of associations "composed of and directed by the very operators that are to be guided by the standards," ante p. 1011 fn. 2, justification of the charge becomes even more attenuated, suggesting as it does that judicial comment is appropriate where there is an asserted admission against interest, but not otherwise. We do not ordinarily single out admissions against interest for comment in the charge.
Claimants' counsel need not celebrate today's decision. The availability of a jury charge commenting favorably on the vocational standard suggested by claimant's evidence inevitably makes available, as the majority have today foretold, a countervailing charge that compliance with a vocational standard is evidence of due care. That is the phenomenon of judicial evenhandedness. Thus do self-serving vocational standards become more important as straw men in the defense of tort actions. See Homan v. County of Dade, 248 So.2d 235 (Fla.3d DCA 1971). There can be no more telling climax to a strategy of trial to the jury, whether by claimant or defendant, than a charge by the trial judge which seems to endorse one's theory of claim or defense.
Though I am persuaded that the subject charge was error, and that the Court's approval of it and a countervailing charge bodes ill for jury trials in Florida, I cannot conclude on this record that the judgment should be reversed. In the light of the evidence on liability and the court's proper charge that violation of the crossbuck statute was negligence, I consider it extravagant but harmless that the court added that violation of an industry crossbuck standard is "evidence of negligence."
I therefore concur in the judgment on this point and in the court's opinion on all others.
NOTES
[1] Railroad-Highway Grade Crossing Warning Systems: Recommended Practices, Bulletin No. 7, Communication and Signal Section, Association of American Railroads.

Based upon a color and shape recognition scheme prescribed by the National Joint Committee on Uniform Traffic Control Devices Manual on Uniform Traffic Control Devices for Streets (MUTCD) and Highways, the black and white (regulatory colors) crossing signs (crossbuck shape to indicate a crossing) were recommended as mandatory at all railroad-highway crossings. In conjunction with those, the MUTCD would require of public authorities the placement of railroad advance warning signs. These 36 inch round yellow signs (yellow indicating a general warning and the round shape indicating the advance warning of a railroad crossing) are recommended to be placed from 1500 feet in advance of the track on high speed roads to 250 feet in relatively low-speed urban areas. The recommended placement of the advance warning signs for rural crossings such as in the instant case is 750 feet. The D.O.T. advance warning sign in the instant case was placed 222 feet in advance of the tracks.
The minimal protective scheme proposed by the industry for grade crossings is two-fold and its purpose is clear: 1) Circular yellow advance warning signs placed by the public authorities to warn of one's approach to a crossing, and 2) black and white crossbucks, placed by the railroad, to mark the actual site of the crossing.
[2] In a special concurring opinion in Jackson v. Harsco Corp., 364 So.2d 808, 810 (Fla. 3d DCA 1978), Judge Barkdull criticized the Florida Freight decision for raising administrative regulations to the dignity of penal statutes or ordinances for the purposes of instructing on negligence. In so doing, Judge Barkdull compared the electorates' power of the ballot to change the makeup of a legislative body that enacts a given penal statute or ordinance with the public's contrasting inability to so affect administrative bodies that promulgate regulations. We do not perceive this problem to exist with respect to industry safety standards, especially, when as in the instant case, the standard is promulgated by a voluntary association, composed of and directed by the very operators that are to be guided by the standards.
[1] In response to railroad counsel's spontaneous request for "an instruction that running into a train is evidence of negligence and that failing to stop, look, and listen is evidence of negligence and all the other things that can be argued is evidence," the trial court replied that "that would be covered by your standard instruction on negligence, but consideration of an industry standard is something the jury might not understand." The court later said that if the charge were error, "it should be a harmless error because it's exactly what the jury is entitled to consider... ."
[2] For example, charges incorporating complex statutes such as Section 316.1575, Florida Statutes (1977), requiring driver "[o]bedience to signal indicating approach of train," tend to cancel any benefit in adhering to the committee's recommendation that the trial court not charge in common law terms on "[r]eciprocal duties at railroad crossing (duty to yield right of way to approaching train.)" Fla.Std. Jury Instr. (Civ.) 4.14b comment.
[3] Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla.3d DCA 1978).