943 So.2d 202 (2006)
Brian BRADLEY and Markesha Bradley, individually and as Parents and Next Friends of Brian Bradley, Jr., a minor, Appellants,
v.
SOUTHERN BAPTIST HOSPITAL OF FLORIDA, INC., a Florida corporation, Appellee.
No. 1D05-1816.
District Court of Appeal of Florida, First District.
October 25, 2006.
Rehearing Denied November 30, 2006.
*203 Tracy S. Carlin of Mills & Carlin, P.A., Jacksonville, for Appellants.
William E. Kuntz, Earl E. Googe, Jr., and Michael H. Harmon of Smith Hulsey & Busey, Jacksonville, for Appellee.
THOMAS, J.
Appellants, Brian and Markesha Bradley, appeal a final judgment entered in favor of Appellee, Southern Baptist Hospital, Inc. ("the Hospital"), finding Appellee not negligent for medical malpractice. Appellants raise three issues on appeal. We find that Appellants have not preserved their third issue, whether the Hospital impermissibly argued that Appellants will receive free medical services, in violation of Florida Physician's Insurance Reciprocal v. Stanley, 452 So.2d 514, 515 (Fla.1984). We address Appellants' remaining two issues on appeal, but because we find that neither issue presents reversible error, we affirm the judgment entered in favor of the Hospital.

Facts and Procedural History
Brian Bradley, Jr. ("the child"), was born with congenital heart defects. Less than one year after his birth, he was admitted to the Hospital for a planned surgery. During this surgery, two catheters were implanted into his heart, allowing various fluids and medications to be infused directly into his heart. These catheters were covered with sterile gauze dressings at the wound site.
Following surgery, the child continued to experience problems with blood flow and low oxygen levels, and his cardiac surgeon performed emergency surgery the next morning to insert a pulmonary artery shunt. The child was monitored throughout the day by Nurse Wells and the surgeon. The child had an elevated temperature, low oxygen levels, and poor blood flow throughout the day, requiring various interventions. Around 5:30 p.m., the surgeon felt the child was stable. The surgeon left the Hospital but remained in contact with the nurses.
*204 At 7:00 p.m., Nurse Harris took over from Nurse Wells. Nurse Harris assessed the child, noted that the dressings around the catheters were saturated, and reinforced the dressings with more gauze pads. She charted all assessments, reported them to the surgeon, and tested the child's glucose level, as required by the Hospital following shift changes. Because his glucose was extremely low, she again called the surgeon, who instructed her to check one of the catheters leading into the heart. Nurse Harris reported that she could not get a blood return, and the surgeon instructed her to switch all medications to a catheter on which she was able to get a blood return. Even with this intervention, the child's condition continued to deteriorate, and the surgeon returned to the hospital. Because the child did not have a pulse when he arrived, the surgeon began CPR. Although he was able to start the child's heart, the child suffered a catastrophic brain injury. Tragically, the child is now a quadriplegic with the brain function of an infant.
Appellants filed a complaint against the Hospital, alleging that the Hospital was negligent, through its employees, when the employees failed to adequately maintain the catheters supplying medicine and nutrition to the child and failed to correct the malfunctioning catheters, which resulted in hypoglycemia and caused the brain injury.
The Hospital denied Appellants' negligence claims, contending that the brain injury resulted not from hypoglecemia, but from his congenital heart abnormalities and multiple interventions during and following the surgeries.
The case proceeded to trial and at the conclusion, the court instructed the jurors on the applicable law, explaining that the jury first had to decide whether the Hospital was negligent through its employees, Nurse Wells or Nurse Harris. The jury was then to decide whether the Hospital was negligent through its nurse managers or supervising employees. The court further instructed the jury that they could consider the defense raised by the Hospital only if the greater weight of the evidence supported Appellants' claims. The verdict form specifically instructed the jury that if they answered no to the first two questions, they should not answer any other questions.
The jury answered no to the first two questions on the verdict form, thus finding the Hospital was not negligent. The jury never reached the third and fourth questions, which asked them to decide if, at the time of the nurses' negligence, the nurses were acting as the borrowed servants of "one or more" of the child's physicians. Based on the jury's finding of no negligence, the trial court entered judgment for the Hospital.
Appellants filed a motion for new trial, arguing that the Hospital's conduct throughout the trial, including counsel's remarks during closing argument, although unobjected to, were improper. In addition, Appellants argued that they were entitled to a new trial because the trial court erred when it gave the borrowed servant instruction. The trial court denied Appellants' motion for new trial. We affirm, but separately address two of the issues Appellants raise.

The Borrowed Servant Instruction
Appellant's first issue on appeal concerns whether the borrowed servant doctrine applies as a matter of law and, if so, whether the trial court properly instructed the jury regarding this defense. While the trial court's instruction on the borrowed servant defense correctly stated the elements of the defense, we find that the borrowed servant defense does not apply here as a matter of law; however, *205 we determine that the trial court's error in giving the instruction was harmless.
While a hospital is generally liable for the negligent actions of its nurses, a nurse can come under the direction and control of a physician, and liability for the nurse's actions then shifts from the hospital to the doctor. Variety Children's Hosp., Inc., v. Perkins, 382 So.2d 331, 334 (Fla. 3d DCA 1980); Hudmon, M.D., v. Martin, 315 So.2d 516, 517 (Fla. 1st DCA 1975). "The most familiar example of this process occurs in the operating room where each of the attending personnel comes under the authority of the surgeon as the `captain of the ship.'" Perkins, 382 So.2d at 334-35. In order for the doctrine to apply, the nurse must be under the complete control of the doctor. See Abraham v. United States, 932 F.2d 900, 902 (11th Cir.App.1991) (applying Florida law and citing Postal Telegraph & Cable Co. v. Doyle, 123 Fla. 695, 167 So. 358 (1936)). In addition, the doctor only becomes liable for the nurse's negligent acts involving professional skill and knowledge, with the hospital remaining liable for the nurse's acts which are purely ministerial. Beaches Hosp. v. Lee, M.D., 384 So.2d 234, 237 (Fla. 1st DCA 1980).
While the Hospital established facts which might generally support giving the borrowed servant instruction under principles of agency law, there is no view of the evidence to legally support giving the instruction. In Perkins, the Third District held that the borrowed servant doctrine did not apply as a matter of law in a post-operative setting. 382 So.2d at 334. The court reasoned that the borrowed servant doctrine had no applicability where the residents were employed and paid by the hospital, their negligent actions occurred several hours after the surgery, and the surgeon was no longer directing their activities nor was he present. Id. at 334-35. Similarly, the Hospital here employed the nurses and paid their salaries, and the nurses' allegedly negligent actions occurred 10 hours after the child's surgery and after the surgeon left the Hospital.
While Florida courts have extended the doctrine to other medical procedures closely related to surgery, Florida courts have not extended the doctrine to a situation far removed from a medical procedure. See Parmerter v. Osteopathic Gen. Hosp., 196 So.2d 505 (Fla. 3d DCA 1967) (extending the doctrine to a delivery room); Lighterman v. Porter, 548 So.2d 891 (Fla. 3d DCA 1989) (extending the doctrine to an emergency room). Courts in other jurisdictions have similarly refused to extend the borrowed servant doctrine to post-operative settings. See, e.g., Perkins, 382 So.2d at 335 (citing cases and stating that courts in other jurisdictions have unanimously held that the hospital, rather than the doctor, is liable in a post-surgical setting); Massey v. Heine, 497 S.W.2d 564, 567 (Ky.1973) (explaining that the borrowed servant principle does not apply when physician did not select the nurse, supervise the injection, and was not present when nurse administered post-operative injection); Clemente v. Roth, 2004 WL 3953814 (D. Md. June 7, 2004) (stating that Maryland law recognizes the borrowed servant doctrine during surgery but the Maryland Court of Appeals has discussed with approval cases from other jurisdictions where physicians were not liable for post-operative care). Further, public policy supports limiting the borrowed servant doctrine to surgical and other closely-related procedures. See Perkins, 382 So.2d at 335 (explaining that acceptance of hospital's position that the residents providing post-operative care were borrowed servants of the surgeon "would both expose every admitting physician to liability for the actions of hospital employees merely *206 because he remains generally in charge of the patient's care and simultaneously relieve the hospital of responsibility for services which it alone should provide and for which it is paid.").
Because we find that the Hospital's borrowed servant defense does not apply as a matter of law, the trial court erred when it instructed the jury on this defense. However,
[n]o judgment shall be set aside or reversed, or new trial granted . . . on the ground of misdirection of the jury . . . unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.
§ 59.041, Fla. Stat. (2003).
After reviewing the record, we find that the trial court's error did not result in a miscarriage of justice because the jury found that the Hospital was not negligent through its nurses; therefore, it never considered the borrowed servant instruction. In fact, the court specifically instructed the jury not to consider the Hospital's borrowed servant defense if the greater weight of the evidence did not support Appellants' claims. We must presume that the jury followed the court's instructions. See Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932, 942 (Fla. 2000). Therefore, based on its verdict, the jury rejected Appellants' theory of the case and did not consider who employed the nurses in reaching its verdict.
While Florida courts have not subjected an erroneous borrowed servant instruction to harmless error analysis, they have held that a trial court's giving or withholding of an instruction on comparative negligence is harmless where a jury finds no negligence, because a party cannot be partially liable when there is no negligence. McArthur v. St. Louis-San Francisco Ry. Co., 306 So.2d 575 (Fla. 1st DCA 1975); Bryant v. Fiadini, 405 So.2d 1341, 1343 (Fla. 3d DCA 1981). In addition, a trial court's failure to give an instruction apportioning damages is harmless in a medical malpractice action when a jury finds no negligence, because there is nothing to apportion when no negligence occurs. Reyka v. Halifax Hosp. Dist., 657 So.2d 967 (Fla. 5th DCA 1995). The Maryland Court of Appeals recognized that a trial court's failure to instruct on a borrowed servant defense was harmless because the jury had found that the nurses were not negligent. Butler-Tulio v. Scroggins, 139 Md.App. 122, 774 A.2d 1209, 1229 (2001). The Maryland court reasoned that because the jury found no negligence, it could not have found the doctor vicariously liable for the nurses' actions. Id. Similarly, the jury here could not have found the child's doctor liable for the nurses' negligence when it found the nurses not negligent.
Although the trial court erred when it gave the borrowed servant instruction, any error was harmless. "[T]he judgment should not be reversed because of the erroneous charges because the rule is well settled that where evidence in a law case discloses no liability, there can be no recovery and a verdict for the defendant in such cases must stand." Bryant, 405 So.2d at 1343 (quoting Murden v. Miami Poultry & Egg Co., 113 Fla. 870, 152 So. 714, 716 (1934)). Thus, Appellants are not entitled to a new trial.

The Hospital's Allegedly Improper Conduct
Appellants next argue that the trial court erred when it denied their motion for new trial, arguing that the Hospital's conduct throughout the trial entitled them to a new trial. Appellants contend that the *207 Hospital's repeated violations of rule 4-3.4(e) of the Rules Regulating the Florida Bar were so egregious and pervasive as to prejudice the jury's ability to fairly assess the evidence in this case; however, most of the conduct to which Appellants now object was not objected to during trial.
A trial court's denial of a motion for new trial is subject to review under an abuse of discretion standard. Bocher v. Glass, 874 So.2d 701, 704 (Fla. 1st DCA 2004). Appellants objected to one comment by Hospital's counsel during voir dire, and the trial court ruled that it constituted a personal attack on Appellants' attorney and immediately instructed the potential jurors to disregard the comment. Appellants also objected to three comments made during the Hospital's closing argument; the trial court sustained two of these objections and overruled one, but instructed Hospital's counsel to limit his argument, and counsel complied. We find that these four contemporaneously objected-to comments were not so pervasive and egregious as to prejudice the jury's ability to fairly assess the evidence in this case. Therefore, the trial court did not abuse its discretion when it denied Appellants' motion for new trial.
Appellants have not demonstrated that the Hospital's closing argument was so egregious that they are entitled to a new trial under the standard set out in Murphy v. International Robotic Systems, Inc., 766 So.2d 1010 (Fla.2000). In Murphy, the supreme court recognized that "a trial judge is in the best position to determine both the propriety of counsel's closing argument and any possible prejudice resulting from any improper argument." Id. at 1023. Therefore, the court held that "a civil litigant may not seek relief in an appellate court based on improper, but unobjected to, closing argument, unless the litigant has at least challenged such argument in the trial court by way of a motion for new trial even if no objection was voiced during trial." Id. at 1027. The court further explained that to prevail on a motion for new trial, the litigant must demonstrate that the argument was improper, harmful, incurable, and so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial. Id. at 1028-30.
In their motion for new trial, Appellants did not specifically list all the allegedly improper comments which they now list on appeal. While the court in Murphy stated only that the "argument" in the motion and the "argument" raised on appeal must be the same, the appellants in Murphy listed all of the allegedly improper comments both in the memorandum of law which accompanied the motion and also in the initial brief on appeal. Here, Appellants did not file a separate memorandum of law, nor did they list all of the allegedly improper remarks in their motion; thus, Appellants did not sufficiently apprise the trial court of the Hospital's improper closing argument. Even if Appellants could meet the high standard for a new trial, their motion here was not sufficient to preserve the issue for appellate review.

Conclusion
Because none of the issues Appellants present requires reversal, we affirm the final judgment in favor of the Hospital.
AFFIRMED.
ALLEN and DAVIS, JJ., concur.