382 So.2d 331 (1980)
VARIETY CHILDREN's HOSPITAL, INC., Appellant,
v.
Thomas PERKINS and Sharon Perkins, etc., et al., Appellees.
Nos. 79-158, 79-627.
District Court of Appeal of Florida, Third District.
February 5, 1980.
*333 Blackwell, Walker, Gray, Powers, Flick & Hoehl and James E. Tribble, Miami, for appellant.
Fazio, Dawson, Steinberg & DiSalvo, Nancy Little Hoffman, Fort Lauderdale, for appellees.
Before HENDRY, BARKDULL and SCHWARTZ, JJ.
SCHWARTZ, Judge.
Variety Children's Hospital appeals from a $1.2 million judgment entered on a general jury verdict against it in a malpractice action. We affirm.
The case was founded upon allegedly negligent post-operative care rendered to the then-four-month-old Anthony Perkins by the hospital's residents and nurses on the night of July 18-19, 1975. Anthony had been admitted to Variety by a private pediatric and thoracic surgeon, Dr. William Brown, for a tracheotomy to correct a congenital condition in the infant's windpipe. Dr. Brown performed the operation in an uneventful fashion on the evening of July 18. After examining Anthony in the intensive care unit, where he had been taken after the surgery, and giving instructions as to his treatment, Dr. Brown left the hospital at 11:00 p.m. The child came then within the exclusive care of the nurses and residents employed by the hospital, primarily a Dr. Nanes who was the surgical resident on call that night. Following a series of events concerning Anthony's condition which it is unnecessary to detail, he became cyanotic and stopped breathing at about 3:55 a.m. During the five-to-seven minute period which elapsed before the hospital personnel were able to restore his breathing and heartbeat, he sustained devastating and irreversible brain damage. The cause of this medical catastrophe was a massive pneumothorax brought about by the gradual accumulation of trapped air beneath the skin, a condition known as subcutaneous emphysema, which entered the body at the site of the tracheotomy and worked itself down until it broke through the surface of the lung. There was ample expert testimony that both the nurses and residents had been negligent in failing to employ adequate medical procedures in the light of the symptoms of subcutaneous emphysema which Anthony had exhibited for almost two hours before the crisis occurred, and in the resuscitation efforts employed after its onset.
In this court, Variety does not claim that the verdicts of $1,000,000 for Anthony, individually, and $200,000 for his parents are excessive. Nor does it contend that the evidence is insufficient to justify the finding, embodied in the general verdict, that its employees were negligent in the plaintiff's care. Its single point on appeal urges error in the rulings of the trial judge that (a) the hospital was vicariously liable as a matter of law for the conduct of its residents and (b) in therefore denying the defendant's requested instructions which would have permitted the jury to find that the residents were the "borrowed servants" of Dr. Brown so that he, rather than Variety, was responsible for their negligence. For two separate reasons, we reject this contention.
In the first place, the "two issue" rule of appellate review adopted in Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1978), would preclude our even considering the point. At 355 So.2d 1186, the supreme court held:
The question arises where two or more issues are left to the jury, and [either] of which may be determinative of the case, and a general verdict is returned, making it impossible to ascertain the issue(s) upon which the verdict was founded. One line of authority holds that reversal *334 is improper where no error is found as to one of the issues, as the appellant is unable to establish that he has been prejudiced. Berger v. Southern Pacific Co., 144 Cal. App.2d 1, 300 P.2d 170 (Cal. 1st DCA 1956); Altieri v. Peattie Motors, Inc., 121 Conn. 316, 185 A. 75 (1936); Knisely v. Community Traction Co., 125 Ohio St. 131, 180 N.E. 654 (1932); Dwyer v. Christensen, 77 S.D. 381, 92 N.W.2d 199 (1958). This is known in jurisprudence as the "two issue" rule. It is a rule of policy, designed to simplify the work of the trial courts and to limit the scope of proceedings on review. See Harper v. Henry, 110 Ohio App. 233, 169 N.E.2d 20 (Ct.App. 1959).
* * * * * *
We believe that the "two issue" rule represents the better view. At first thought, it may seem that injustice might result in some cases from adoption of this rule. It should be remembered, however, that the remedy is always in the hands of counsel. Counsel may simply request a special verdict as to each count in the case. See Harper v. Henry, supra. Then, there will be no question with respect to the jury's conclusion as to each. If the trial court fails to submit such verdicts to the jury, counsel may raise an appropriate objection.
Had petitioners in the instant case requested special verdicts and objected to submission of a general verdict form to the jury, it would have been necessary for the district court to determine the sufficiency of the evidence to sustain the false imprisonment count as well as the malicious prosecution count. If there was error as to either count, the district court should then remand the case for a new trial as to both counts. However, petitioners failed to meet these requirements. Where the district court determines under these circumstances that one of the issues submitted to the jury was free from prejudicial error, it will be presumed that all issues were decided in favor of the prevailing party and the judgment will be affirmed. See Larriva v. Widmer, 101 Ariz. 1, 415 P.2d 424 (1966).
This doctrine clearly applies to this case. As has been noted, the hospital's only appellate issue concerns its liability for the actions of the physicians-residents involved in Anthony's care. It admits both that the trial court correctly held that it was vicariously responsible, as a matter of law, for the negligence of the nurses in question and that there was evidence of such negligence in the record. The general verdict does not reveal whether the jury found against the defendant because of the actions of the nurses, the residents, or both. Since Variety did not request the submission of special interrogatories which would have shown the basis or bases of the verdict, we are compelled conclusively to presume that the verdict was grounded, at least in part, on the nurses' negligence, as to which it is conceded there was no error committed below. The appellant thus simply cannot establish prejudice in the challenged rulings concerning its responsibility for the residents, and therefore may not secure a reversal even if those rulings were erroneous.
The hospital has lost nothing, however, by its failure properly to preserve the issue in the trial court. Out of what is probably an overabundance of caution, we have examined the merits of its position and find that the trial judge's determinations on the point in question were entirely correct. The record contains no evidence whatever upon which the jury could properly find that Variety's residents, who were employed and paid by the hospital and were under its supervision and control, became "borrowed servants" of Dr. Brown at the time of the commission of their negligent acts. As the appellant acknowledges, a hospital is, as a general rule, liable for the negligence of interns or residents like those involved in this case. City of Miami v. Oates, 152 Fla. 21, 10 So.2d 721 (1942); Parmerter v. Osteopathic General Hospital, 196 So.2d 505 (Fla.3d DCA 1967). Such an employee may, it is true, come under the direction and control of an attending physician so as to shift responsibility for his acts from the hospital to the doctor. The most *335 familiar example of this process occurs in the operating room where each of the attending personnel comes under the authority of the surgeon as the "captain of the ship." E.g., Hudmon v. Martin, 315 So.2d 516 (Fla.1st DCA 1975); Buzan v. Mercy Hospital, Inc., 203 So.2d 11 (Fla.3d DCA 1967).
But this principle has utterly no application to the case at bar, in which the negligence occurred when the surgery had long since been completed and the surgeon was neither physically present nor any longer directing the activities of the hospital employees. It is a fundamental rule that the respondeat superior doctrine applies only when the alleged master has the ability and authority to direct and control the pertinent acts of the employee, Murphy v. Bowden, 25 Fla. 454, 6 So. 453 (1889); Berrier v. Associated Indemnity Co., 142 Fla. 351, 196 So. 188 (1939) (lent servant doctrine). Based upon this doctrine, the courts have unanimously held that in a post-surgical situation such as this one, the hospital and not the physician is liable for the acts of its employees. Hohenthal v. Smith, 72 App.D.C. 343, 114 F.2d 494 (D.C. Cir.1940); Adams v. Leidholt, 579 P.2d 618 (Colo. 1978); Bernardi v. Community Hospital Association, 166 Colo. 280, 443 P.2d 708 (1968); Davis v. Trobough, 139 Mont. 322, 363 P.2d 727 (1961); Stumper v. Kimel, 108 N.J. Super. 209, 260 A.2d 526 (1970), cert. denied, 55 N.J. 589, 264 A.2d 526 (1970), see also Barrette v. Hight, 353 Mass. 268, 230 N.E.2d 808 (1967). We agree with and follow these decisions. A contrary holding, accepting Variety's position on the facts of this case, would both expose every admitting physician to liability for the actions of hospital employees merely because he remains generally in charge of the patient's care; and simultaneously relieve the hospital of responsibility for services which it alone should provide and for which it is paid. Each of these results is entirely undesirable and completely contrary to the decided cases. As Justice Rutledge stated in Hohenthal v. Smith, supra, at 72 App. D.C. 345, 114 F.2d 496:
Part of the service furnished to the patient and charged for by the hospital is the assistance of nurses, interns and attendants in caring for the patient after the operation pursuant to instructions given by the operating surgeon. They perform the duty of their employer (the hospital) to the patient when they carry out the instructions of the doctor.
In Alden v. Providence Hospital, 127 U.S. App.D.C. 214, 217, 382 F.2d 163, 166 (D.C. Cir.1967), the same court similarly observed:
... even though a patient has an attending physician selected by him, when that patient goes to a hospital, the service rendered by the hospital ordinarily includes medical care from the doctors and nurses employed by the hospital as well as access to any laboratory facilities maintained by the hospital. While it may be that an attending physician remains in charge of the case, the hospital and its agents remain responsible for those services it performs, or should perform, under the circumstances of the case and according to good medical practice.
We therefore conclude that the trial judge correctly ruled that Variety was liable as a matter of law for the negligence of the residents involved in this case.

Motion to Remand with Directions to Abate
The final judgment in this case was entered on December 18, 1978. On January 4, 1979, the minor plaintiff, Anthony Perkins, died. On January 17, 1979, after Anthony's estate had been substituted as a party plaintiff, the trial judge denied Variety's post-trial motion for judgment in accordance with its motion for a directed verdict in its favor. It filed a notice of appeal the next day, January 18. On February 2, 1979, the personal representative of Anthony's estate filed a separate wrongful death action against Variety under Section 768.21, Fla. Stat. (1977). The complaint alleged that the negligence involved in the instant action had resulted in Anthony's death and that the present judgment precluded Variety from relitigating the issue of liability in the wrongful death case, leaving only questions of damages to be determined. As a *336 result of these events, Variety moved this court, on March 28, 1979, for a order remanding the cause with directions to the trial court to "abate" the action which had culminated in the judgment it sought to review. The basis of the motion was the contention that Anthony's death, caused by Variety's negligence, had terminated the right to recover for his personal injuries by virtue of Section 768.20, Fla. Stat. (1977), which states:
The [wrongful death] action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death. When a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate... [e.s.]
See Martin v. United Security Services, Inc., 314 So.2d 765 (Fla. 1975). The motion is denied.[1]
The precise issue raised by the motion is whether the cited provision of Sec. 768.20 applies when the injured person dies after a final judgment has been entered in his favor, but before the termination of proceedings for review of that judgment. Our holding that it does not is in accordance with literally every authority on the issue. The applicable doctrine is stated in 1 Am.Jur.2d Abatement, Survival, and Revival, § 60 (1962):
It is well settled in most jurisdictions that an action is not abated by the death of a party after the cause has been merged in a final judgment and while the judgment stands, and this is the rule even though the judgment is based on a cause of action that would not have survived had the party died before judgment.

A final judgment is the end of litigation. That which up to the moment of the entry of judgment for the relief sought was a matter in controversy becomes an absolute debt of one party to the other. The cause of action ceases to exist, being merged in the judgment; and consequently, so long as the judgment remains in force, the rule on survival has no further application. This is true though the proceedings are stayed by appeal and supersedeas. [emphasis supplied]
Accord: e.g., Tunnell v. Edwardsville Intelligencer, Inc., 43 Ill.2d 239, 252 N.E.2d 538 (1969), cert. denied, 397 U.S. 1021, 90 S.Ct. 1259, 25 L.Ed.2d 530 (1970); Ahearn v. Goble, 90 Colo. 173, 7 P.2d 409 (1932); Siberell v. St. Louis-San Francisco R. Co., 320 Mo. 916, 9 S.W.2d 912, 918 (1928) (rule "as obvious as it is elementary"); Mayor of City of Anniston v. Hurt, 140 Ala. 394, 37 So. 220 (1904); Eades v. House, 3 Ariz. App. 245, 413 P.2d 576 (1966). With specific relation to the facts before us, the rule that death does not effect an extinguishment of a judgment applies when the party dies while an appeal is pending, Brundrett v. Hargrove, 204 Ark. 258, 161 S.W.2d 762 (1942); Heuchert v. State Industrial Accident Commission, 168 Or. 74, 121 P.2d 453 (1942); while post-trial motions remain undisposed of, Gambell v. Irvine, 102 S.W.2d 784 (Mo. 1937); Sherwin v. Southern Pacific Company, 168 Cal. 722, 145 P. 92 (1914); 1 C.J.S. Abatement and Revival § 126 (1936); and even during the period between the return of a verdict and the entry of a judgment. Garrett v. Byerly, 135 Wash. 351, 284 P. 343 (1930); see Becker v. King, 307 So.2d 855, 858 (Fla.4th DCA 1975). Indeed it would be a strange rule under which a defendant could succeed in relieving itself of a judgment simply by pursuing meritless, even frivolous, attempts to reverse it. See McNitt v. Osborne, 371 So.2d 696, 697 n. 1 (Fla.3d DCA 1979). As was said, viewing the other side of the coin in Bailey v. Travelers Ins. Co., 383 S.W.2d 562, 564 (Tex. 1964):
Here Bailey was awarded a judgment but payment was withheld pending appeal. *337 It would be a harsh result if Bailey's heirs were to lose what he would have otherwise been entitled to simply because he died pending an appeal which was ultimately determined not to have been well founded.
The appellant's argument in support of its motion is based entirely on an interpretation of Sec. 768.20 which is strained to the breaking point and beyond. Citing numerous cases which indicate that an action may be considered to continue, but see State ex rel. Merchants' Nat. Bank v. Hull, 37 Fla. 579, 20 So. 762 (1896), or to be "pending," but see Kornblum v. Heflin, 183 So.2d 483 (Fla.2d DCA 1966), cert. denied, 189 So.2d 632 (Fla. 1966), while on appeal, it claims that the personal injury action was "pending" within the meaning of the statute when Anthony died, and therefore was "abate[d]" at that time. This contention runs afoul of one of the most basic rules of statutory construction: that words, particularly technical ones, must be interpreted in the specific context in which they are used. See Alsop v. Pierce, 155 Fla. 185, 19 So.2d 799, 803 (1944). Every case upon which Variety relies deals with a legal problem which is totally different from the one before us.[2] The issue in this case concerns only the proper interpretation of Sec. 768.20 which provides that the pending action shall "abate" at death. It is no less than obvious that the statute could not apply in an action where post-judgment motions are "pending."[3] This is so primarily because it is a legal impossibility  a complete contradiction in terms  for a judgment to "abate." Judgments may be reversed, set aside, or vacated but they cannot be "abated;" conversely, only actions which are "pending" *338 before being reduced to judgment can be the subject of an abatement. See 1 Fla. Jur.2d Actions §§ 62-87 (1977); cf. Brinker v. Ludlow, 379 So.2d 999 (Fla.3d DCA 1980). Thus, the simple fact that the legislature spoke in the technical terms of the abatement doctrine alone demonstrates the lack of merit in the appellant's position.
It is a fundamental principle that a subsequent change in circumstances, including the death of a party, does not affect the validity or enforceability of a duly entered final judgment. E.g., State ex rel. Merchants' Nat. Bank v. Hull, supra; Constance v. Constance, 366 So.2d 804 (Fla.3d DCA 1979). As the cited authorities demonstrate, that principle requires the denial of Variety's motion to remand.[4]
Affirmed; motion to remand denied.[5]
NOTES
[1] Upon a hearing on the motion held soon after it was filed, the court reserved ruling pending consideration of the appeal. We took this course because it is conceded by the appellees that, if the judgment were reversed on the merits, the action would again be "pending" in the lower court and would, by operation of Sec. 768.20, then be subject to abatement. Our determination that there was no error now requires a ruling on the motion.
[2] Of the Florida cases cited to the effect that an appeal is a continuation of the proceedings in the trial court, Smith v. State, 192 So.2d 346 (Fla.2d DCA 1966) and Coleman v. State, 215 So.2d 96 (Fla.4th DCA 1968) deal with a criminal defense lawyer's duty or authority to file an appeal; State ex rel. Andreu v. Canfield, 40 Fla. 36, 23 So. 591 (1898) concerns the issue of whether service of new process was required on an appeal; and Southern Title Research Company v. King, 186 So.2d 539 (Fla.4th DCA 1966) involves the question of whether one who purchased real property before the time for an appeal expired would be considered a "purchaser pendente lite."

Several of the cases cited as to the meaning of the word "pending" deal with the question of whether procedural rules or a change in the law would affect a case "pending" on appeal, Rader v. Variety Children's Hospital, 323 So.2d 564 (Fla. 1975); Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975); Perzinski v. Chevron Chemical Co., 503 F.2d 654 (7th Cir.1974); United States v. Claus, 5 F.R.D. 278 (E.D.N.Y. 1946); Larson v. Fetherston, 44 Wis.2d 712, 172 N.W.2d 20 (1969). Others concern the issue of whether another action was pending involving the same controversy, Williams v. State Board of Control, 62 Cal. App.3d 960, 133 Cal. Rptr. 539 (1976); Rilcoff v. Superior Court of Los Angeles County, 50 Cal. App.2d 503, 123 P.2d 540 (1942); In re Custody of Rector, 565 P.2d 950 (Colo. App. 1977). Becker Steel Company of America v. Hicks, 66 F.2d 497 (2d Cir.1933), cert. denied, 290 U.S. 667, 54 S.Ct. 88, 78 L.Ed.2d 576 (1933) and Jaubert Brothers v. Landry, 15 So.2d 158 (La. App. 1943) discuss the problem of whether enforcement proceedings were "pending" after judgment; and MacKenzie v. A. Engelhard & Sons Company, 266 U.S. 131, 45 S.Ct. 68, 69 L.Ed. 205 (1924) holds that one who purchases real property while an appeal is pending is a "purchaser pendente lite."
[3] It should be noted that the only Florida case which directly refers, albeit in another context and in dictum, to the issue, Kornblum v. Heflin, supra, states as follows at 183 So.2d 843:

Section 733.16(1), Fla.Stats., F.S.A., provides in part that no claim shall be valid or binding upon an estate unless the claim is filed in writing in the office of the probate court within six months after the first publication of notice to creditors. The provision goes on to state:
* * * * * *
"... no cause of action, at law or in equity, heretofore or hereafter accruing * * shall survive the death of the person against whom such claim may be made, whether suit be pending at the time of the death of such person or not, unless such claim be filed in the manner within the said six months as aforesaid; * * *." (Emphasis added.)
This section seems to place the burden upon a claimant to file his claim against an estate within the prescribed period in order to preserve its validity. "Pending," of course, means begun but not yet completed, and a suit is "pending" from its inception until the rendition of a final judgment. Black Law Dictionary (4th ed. 1951). [emphasis supplied]
There is no doubt that, as used in the Kornblum opinion, the word "rendition" refers to the "entry" of the final judgment, rather than, as Variety argues, the time that the judgment is rendered for appeal purposes when post-trial motions are denied. Dibble v. Dibble, 377 So.2d 1001 (Fla.3d DCA 1979); McNitt v. Osborne, 371 So.2d 696 (Fla.3d DCA 1979); Becker v. King, supra; cf. DeFilippis v. DeFilippis, 378 So.2d 325 (Fla.4th DCA 1980). The language in the Kornblum case therefore runs directly contrary to the claim that the action below remained "pending" after judgment was entered on December 18, which is the cornerstone of Variety's argument.
[4] The alternative motion to relinquish jurisdiction to the trial court for the filing of a motion under Fla.R.Civ.P. 1.540 is likewise denied. Constance v. Constance, supra.
[5] We express no view whatever as to the effect, if any, of the final judgment which we have affirmed in this case upon the now-pending wrongful death action. Those issues, along with all others which may arise in the course of that case, are ones which must initially be decided by the lower court in the case itself, subject only to later appellate review.