548 So.2d 251 (1989)
Olga VASQUEZ, As Guardian of the Person and Property of Michelle O. Cardona, Incompetent, and Sonia M. Cardona, Incompetent, Appellant/Cross-Appellee,
v.
The BOARD OF REGENTS, STATE OF FLORIDA, and Raymond J. Fernandez, M.D., Appellees/Cross-Appellants.
No. 88-01363.
District Court of Appeal of Florida, Second District.
July 12, 1989.
Rehearing Denied September 5, 1989.
Frank Lester Adams, III, and Michael Foster of Genders & Foster, P.A., Tampa, for appellant/cross-appellee.
A. Broaddus Livingston, John W. Boult, and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellees/cross-appellants.
FRANK, Judge.
The questions before us in this matter arise from a medical negligence action initiated by Olga Vasquez, the guardian of an infant girl who suffered irreversible brain damage during the course of treatment received at Tampa General Hospital. Vasquez sued the Hillsborough County Hospital Authority, which owns and operates Tampa General Hospital, Doctors Fred I. Lipschutz and Bernadine Hillseth, the resident *252 physicians responsible for the child's treatment, the Board of Regents (BOR) which oversees the state's university system, and Dr. Raymond Fernandez, a BOR employee. Vasquez settled the claim against the Hospital Authority and the resident physicians for $100,000.00, the limit permitted by the waiver of sovereign immunity statute applicable to this incident, section 768.28(5), Florida Statutes (1987). After releasing the residents and the Hospital Authority, Vasquez continued to pursue her claims against Fernandez and the BOR.
The University of South Florida College of Medicine, under the control of the BOR, participates with the Hospital Authority through an "Affiliation Agreement" in a program for the training of residents in several departments at Tampa General including pediatrics. The BOR's role is to implement an educational function carried out through the College of Medicine and its faculty. Fernandez, as an attending faculty member, served as a pediatric advisor and teacher of medical students and residents and was available for consultation and review. He did not, however, direct the treatment rendered by the residents. Lipschutz was the chief pediatric resident and Hillseth was a first-year resident. When the claimed negligence occurred, Fernandez was "on call" but was not at the hospital and was not consulted by Lipschutz or Hillseth.
The Affiliation Agreement benefits Tampa General by enabling the hospital to render enhanced medical service to its patients. The Agreement reflects the receipt by Tampa General of benefits in return for the Hospital Authority's payment of 63% of the stipend received by postgraduates participating in the program (referred to throughout the Affiliation Agreement as "house staff"). The Hospital Authority pays the "house staff's" fringe benefits and administrative costs.
The foregoing background is pertinent to this matter because, having released Lipschutz, Hillseth and the Hospital Authority, Vasquez would be able to recover from Fernandez and the BOR only if it could be shown that they were directly or vicariously liable, that the release of some tortfeasors did not operate to release all tortfeasors, and that Vasquez's settlement with the Hospital Authority had not exhausted the maximum recovery allowable under the state's waiver of sovereign immunity. These issues were considered by the trial court upon motions for summary judgment. The trial court concluded that Fernandez was not independently negligent but that both he and the BOR were vicariously liable for the negligence of the residents; that the sovereign immunity of the BOR and of Fernandez was not waived by the BOR's self-insurance trust fund and that the maximum amount recoverable from all defendants was $100,000; that the Hospital Authority's settlement with Vasquez represented the maximum recovery allowable; and that the release of Lipschutz, Hillseth and the Hospital Authority acted, as a matter of law, as a release of Fernandez and the BOR from any vicarious liability arising from Lipschutz's or Hillseth's negligence. Vasquez contends that the trial court mistakenly determined that Fernandez and the BOR were released, and that she had recovered the maximum sum allowable. Fernandez and the BOR have cross-appealed the trial court's finding that they were vicariously liable.
We note at the outset that Vasquez has correctly urged the view that the release she signed did not release Fernandez and the BOR. Although Fernandez and the BOR assert that the release of an agent or an employee operates as a matter of law to terminate the claim asserted against the principal whose liability is based upon the doctrine of respondeat superior, Theophelis v. Lansing General Hospital, 148 Mich. App. 564, 384 N.W.2d 823 (1986), aff'd, 430 Mich. 473, 424 N.W.2d 478 (1988); 53 Am.Jur.2d, Master and Servant, § 408, this common law rule has been abolished in Florida by section 768.04(1), Florida Statutes. Sun First National Bank of Melbourne v. Batchelor, 321 So.2d 73 (Fla. 1975); Eason v. Lau, 369 So.2d 600 (Fla. 1st DCA 1978); see also Hinton v. Iowa National Mutual Insurance Agency, 317 So.2d 832, 835 (Fla. 2d *253 DCA 1975), cert. denied, 328 So.2d 842 (1976). In Hertz Corp. v. Hellens, 140 So.2d 73 (Fla. 2d DCA 1962), this court squarely rejected the argument now advanced by Fernandez and the BOR: "We hold that the act [i.e., section 768.041(1), Florida Statutes] applies to all tortfeasors, whether joint or several, including vicarious tortfeasors." The plain language of the statute compels this result:
A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death. § 768.041(1).
To the same effect is section 768.31(5), Florida Statutes, which provides:
When a release or covenant not to sue or not to enforce judgment is given in good faith to one or two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide... .
Neither Fernandez nor the BOR has offered any principle of statutory construction or policy argument capable of dissuading us from the view that the release executed in favor of Lipschutz, Hillseth, and the Hospital Authority, which explicitly stated that there were "other defendants in this case that are not parties to this agreement," did not release Fernandez and the BOR from any residual liability.
In spite of the fact, however, that section 768.31(5) insulates the potential liability of Fernandez and the BOR from the effect of the release, we are persuaded that the trial court erroneously imposed a vicarious liability upon them for the unfortunate incident. Our independent review of the record in its entirety convinces us that the trial court properly found that Fernandez was not in any way directly negligent. Looking further, however, we can discern no basis for imposing a vicarious liability upon him. Fernandez was the attending physician for the period in which this problem arose, a position held in rotation on a monthly basis by faculty members in the pediatrics department at the College of Medicine. Although Fernandez's name is on the discharge summary as one of the admitting physicians, ("Fernandez/Lipschutz"), it was undisputed that he did not admit the patient. In fact, there is no evidence from which it can be shown that he had any knowledge of the treatment being given the child until after the hypoxia-induced brain damage had occurred. As a faculty member Fernandez was simply to teach the residents and medical students. He could not perform that duty on any given case without first being consulted, and there is no evidence that he negligently failed to instruct the residents as to when it would be appropriate to seek his advice.
The residents stated that Fernandez essentially was their "supervisor," and it was probably upon this basis that the trial court held him vicariously liable, although there is no finding to that effect and the reason for that ruling is not apparent from the record. The fact is, however, that it was not Fernandez's obligation to supervise the day-to-day activities of the residents who were working as employees of Tampa General. As a faculty member charged with educating residents and medical students, it is manifest from the record that he did not exercise a sufficient quantum of control over the residents in their capacities as treating physicians to be deemed a principal vicariously liable for their actions at any given moment. Where the negligence of a resident does not occur under the physician's direct supervision and control, our courts have generally refused to impose vicarious liability upon the physician. See, e.g., Variety Children's Hospital, Inc. v. Perkins, 382 So.2d 331 (Fla. 3d DCA 1980).
The BOR is not vicariously liable for the same reasons applicable to Fernandez. It is the Hospital Authority, not the BOR, that is charged with the ultimate responsibility for delivering adequate medical care to patients at Tampa General. See Irving v. Doctors Hospital of Lake Worth, Inc., *254 415 So.2d 55 (Fla. 4th DCA), rev. denied, 422 So.2d 842 (Fla. 1982). Although Tampa General and the BOR are uniquely connected by the "Affiliation Agreement" under which the two entities share responsibility for selecting, training, and paying the residents, the document does not create an agency relationship between them such that the College of Medicine, or the University of South Florida, and hence the BOR, would be liable for unsound medical treatment by Tampa General's residents. One stated purpose of the agreement is to enable Tampa General "to render better service to its patients... ." A contract alone is insufficient to establish an agency relationship between two interrelated parties absent the exercise of control or domination over the everyday affairs of one by the other. The principle followed by this court in Folwell v. Bernard, 477 So.2d 1060, 1063 (Fla. 2d DCA 1985), rev. denied, 486 So.2d 595 (Fla. 1986), is particularly applicable here:
[W]here vicarious liability is sought to be imposed upon one of two ostensibly interrelated entities through the ordinary principles of agency, the imposition of of evidence that one entity, the purported principal, dominates and controls the other.
Vasquez urges that Jaar v. University of Miami, 474 So.2d 239 (Fla. 3d DCA 1985), is directly on point and stands for the principle that the BOR should be held vicariously liable for the acts of the residents. In Jaar a faculty member of the University of Miami College of Medicine served as head of the burn unit of a private hospital and in that capacity supervised residents and treated patients. One Sunday morning three medical residents improperly administered anesthesia to Salim Jaar, causing his death. The faculty member, Dr. Ward, was not present at the time. Nevertheless, the University was held vicariously liable. The critical element, not present here, is that Dr. Ward's own negligence was admitted in that case, although the basis for that admission is not revealed in the reported decision. In the light of that fact, it was proper for the court to examine the relationship between Dr. Ward and the University and to determine whether Dr. Ward was acting within the scope of his employment or agency relationship with the University at the time of the incident. Here, however, Fernandez was neither directly or indirectly negligent, and thus the BOR cannot be held vicariously liable on the basis of his mere status as a faculty member. Furthermore, it is clear that the BOR did not employ the residents, in spite of the stipend referred to in the Affiliation Agreement. The relationship between the residents and the BOR was wholly that of student/teacher and not employee/employer or agent/principal. Thus, absent negligence by its own employee, Fernandez, there exists no basis for holding the BOR vicariously liable for the actions of Lipschutz and Hillseth. It is for the foregoing reasons that on the cross-appeal we reverse the trial court's contrary determination.
Finally, Vasquez challenges the trial court's finding that the $100,000 settlement payment from the Hospital Authority exhausted the waiver of immunity limits provided in section 768.28(5). We affirm that point. In Gerard v. Department of Transportation, 472 So.2d 1170 (Fla. 1985), the Florida Supreme Court flatly rejected the notion that a plaintiff can "stack" sovereigns and exceed the statutory limits. The BOR established a self-insurance trust fund, but the fund's coverage was "limited to those risks for which sovereign immunity has been waived or described in section 768.28, Florida Statutes." Thus, even if Fernandez or the BOR were deemed vicariously liable, Vasquez by her settlement had obtained the maximum amount available under section 768.28(5).
Accordingly, the summary judgment is affirmed in part and reversed in part, and this cause is remanded for the entry of summary judgment in favor of the Board of Regents and Dr. Raymond Fernandez.
RYDER, A.C.J., and DANAHY, J., concur.