**Benjamin A. REED, a minor, By and Through Lavern A. REED and Linda L. Reed, his parents and natural guardians, Lavern A. Reed, Linda L. Reed, individually, Plaintiffs–Appellees, Cross–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellant, Cross–Appellee.**

**No. 88–5956.**

United States Court of Appeals, Eleventh Circuit.

Jan. 11, 1990.

Jeanne M. Mullenhoff, Asst. U.S. Atty., Miami, Fla., Jeremy Paul, and John F. Cordes, Appellate Section, Civ. Div. Dept. of Justice, Washington, D.C., for defendant-appellant, cross-appellee.

Bambi G. Blum, Daniels & Hicks, P.A., Mark Hicks, Miami, Fla., for plaintiffs-appellees, cross-appellants.

Before TJOFLAT, Chief Judge, and VANCE *, Circuit Judge, and PITTMAN **, Senior District Judge.

VANCE, Circuit Judge:

This appeal arises from a wrongful death action brought by Benjamin Reed, by and through his parents Linda and Lavern Reed, and his parents in their individual

---

* This opinion was written by Honorable Robert S. Vance and concurred in by panel members prior to his death on December 16, 1989.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

capacities against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. Appellees alleged that the United States committed medical malpractice in connection with the birth of Benjamin Reed and that, as a result, Benjamin was born with static cerebral injuries secondary to neonatal asphyxia, psychomotor retardation, cerebral palsy, and other severe and disabling injuries.

## I. BACKGROUND

After this case was set for trial the parties began settlement negotiations aimed at resolving Benjamin's individual claim, his parents' claims, and providing ·for Benjamin's medical expenses and plaintiffs' attorney's fees. Plaintiffs' attorney offered a detailed settlement proposal by letter dated November 3, 1986. The United States responded with an alternate structured settlement proposal by letter dated November 5. After several discussions regarding the final settlement, plaintiffs' attorney orally accepted the government's offer on November 12, 1986.[1] On November 20, Linda and Lavern Reed executed an affidavit agreeing to the terms of the settlement and requesting the court to approve it.

At a status conference before the district court on November 18, 1986, counsel for the United States informed the court that a settlement had been reached but that final approval had to be obtained at two additional levels of review and authorization within the Justice Department. Final approval was obtained on November 26, 1986, when Arnold J. Burns, Deputy Attorney General, authorized the settlement agreement.

The attorney for the United States informed plaintiffs'· attorney by telephone on the morning of November 28, 1986, that the settlement had received final approval. Plaintiffs' attorney immediately dispatched a speed memo to the government's attorney confirming approval. The government's attorney prepared a "Stipulation for Compromise Settlement" and sent it to plaintiffs' attorney for signature by letter dated December 1, 1986. The accompanying cover letter confirmed that final approval had been obtained.

Benjamin Reed died during the evening of November 28, 1986. Over the government's opposition, plaintiffs sought to enforce the settlement reached between the parties before Benjamin's death. The government contended that the district court lacked subject matter jurisdiction to enforce the settlement. The government first argued that under Florida law the personal injury action abated on Benjamin's death. Second, the government contended that the dispute now involved a claim against the government grounded in contract and that consequently under the Tucker Act the United States Claims Court had exclusive jurisdiction over the claim. See 28 U.S.C. §§ 1346(a)(2) and 1491. The district court rejected both of these contentions. The court found that the parties had reached a final settlement before Benjamin's death and granted plaintiffs' motion to approve and enforce the settlement agreement. 717 F.Supp. 1511. The government appealed and we now affirm.

1. Under the terms of the structured settlement agreement accepted by plaintiffs, Linda Reed would receive $160,000 in cash and a monthly annuity of $1,000 for life, guaranteed for a period of at least twenty years. Lavern Reed would receive $125,000 in cash and a monthly annuity of $750 for life, guaranteed for a period of at least twenty years. Benjamin would receive $500,000 in cash and a monthly annuity of $1,000 for life, increasing by 3% compounded annually and guaranteed for a period of at least ten years. Future cash payments would be provided to Benjamin in the amount of $100,000 ten years from the date of settlement and $500,000 twenty years from the date of settlement. These payments were not dependant on Benja-

min's survival. The agreement required the government to establish a reversionary medical trust for Benjamin. The trust initially would be funded with $450,000 in cash and later would be funded through the purchase of an annuity that would provide $50,000 per year, increasing at an annual rate of 5% compounded annually. This annuity would be payable during Benjamin's life and guaranteed for a minimum period of five years. Upon Benjamin's death the trust would revert to the government. The first annuity payment to the trust would be made one year from the date of settlement. Finally, the agreement provided for the payment of plaintiffs' attorney's fees.

## II. DISCUSSION

■ The government contends that the district court lacked subject matter jurisdiction to enforce the settlement. In the government's view, the motion to enforce the settlement agreement after Benjamin's death converted the action into a breach of contract claim. The government correctly states that federal district courts do not have jurisdiction to entertain breach of contract claims in which the government is a party and the claims exceed $10,000. The Tucker Act vests exclusive jurisdiction over these claims in the United States Claims Court. 28 U.S.C. § 1491. In this case, however, the district court properly assumed jurisdiction under the FTCA. We hold that under these circumstances the jurisdiction of the district court includes the power to enforce a settlement resulting from the claim that provided the basis for jurisdiction.

Our conclusion is supported by this court's decision in *Kent v. Baker*, 815 F.2d 1395 (11th Cir.1987). In that case the parties to a suit involving an age discrimination claim informed the court on the third day of trial that they had agreed to settle the case and would later seek dismissal of the suit. Before the case was dismissed one party refused to abide by the settlement agreement and the other party requested the court to enforce the settlement agreement or, in the alternative, to resume trial. The district court dismissed the suit for lack of jurisdiction on the ground that the settlement agreement mooted the age discrimination action. We reversed, holding that a district court has jurisdiction to enforce a settlement agreement prior to

dismissal of the action. The rule the government urges that we adopt would create a result inconsistent with *Kent*. Under the government's proposed rule a district court would never retain jurisdiction to enforce an agreement settling a claim of over $10,000 involving the government because, once the action providing the initial basis of jurisdiction was settled, any attempt to enforce the settlement would be deemed a breach of contract claim required to be brought under the Tucker Act.

Appellant seeks to distinguish *Kent* by contending that after Benjamin died his tort action was no longer pending and therefore the court no longer had subject matter jurisdiction to enforce the settlement agreement. The government contends that under Florida law appellees' personal injury action abated on the death of Benjamin and that, because the original basis of jurisdiction was destroyed, appellees' only viable cause of action would be a suit for wrongful death. The government relies on Florida Stat. § 768.20, which provides in part as follows:

> When a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate.

We conclude that this statute does not apply under the circumstances of this case. The district court found that the parties intended to be bound and that a final settlement had been reached between the parties on November 26, 1986, two days before Benjamin's death. We have reviewed the record in this case and conclude that these findings are not clearly erroneous.[2] A set-

**2.** The government offers two grounds for its contention that there was no settlement. We find that both of these arguments are without merit. The government first contends that the settlement agreement fails because it is silent as to what would happen if Benjamin died before the terms of the agreement were executed. We agree with the district court, however, that the settlement agreement contemplated the death of Benjamin. Both parties were aware that Benjamin was not expected to live long. Taking into account Benjamin's short life expectancy, the government negotiated a settlement agreement which provided that the medical trust would revert to the government on Benjamin's death.

*See supra* note 1. The settlement agreement also was intended to be the entire agreement between the parties. Benjamin's death was a contingency specifically contemplated by the parties; therefore, because the government failed to negotiate a clause that would have allowed it to escape its obligations if that contingency occurred, the government cannot escape its obligations now. Under Florida law not every contingency has to be provided for in order to have an enforceable agreement. *See Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 302 So.2d 404, 408 (Fla.1974).

Second, the government argues that the agreement fails for the omission of essential terms

tlement is as conclusive of the rights between the parties as a judgment. *See Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir.1967); *Crisp County v. S.J. Groves & Sons Co.*, 73 F.2d 327, 329 (5th Cir.1934); *Gunn Plumbing, Inc. v. Dania Bank*, 252 So.2d 1, 4 (Fla. 1971); *Wallace v. Townsell*, 471 So.2d 662, 664 (Fla.Dist.Ct.App.1985) ("The parties to a civil action have the right to settle the controversy between them by agreement at any time and an agreement settling all issues in the case is binding not only upon the parties but also upon the court."). Because the action had been settled, no personal injury action existed at the time of Benjamin's death that could have abated. The court's jurisdiction to enforce the settlement thus was unaffected by Benjamin's death.

Even if the Florida doctrine of abatement did apply, we would conclude that there was no abatement in this case. While no Florida court yet has been confronted with this precise issue, we are persuaded by the case of *Variety Children's Hosp. Inc. v. Perkins*, 382 So.2d 331 (Fla.Dist.Ct.App. 1980), that a Florida Court would find no abatement under the circumstances of this case. In *Variety*, final judgment had been

entered on plaintiff's personal injury claims but the appeal had not yet been ruled upon when the plaintiff died. On appeal the defendant moved to remand the case with directions to the trial judge to abate the action under section 768.20. Defendant argued that the case was subject to abatement because it was pending when the plaintiff died. The court held that section 768.20 does not apply in this situation. In declining to adopt defendant's strict interpretation of an action "pending" at the time of the plaintiff's death, the court stated the following:

> With specific relation to the facts before us, the rule that death does not effect an extinguishment of a judgment applies when the party dies while an appeal is pending, while post-trial motions remain undisposed of; and *even during the period between the return of a verdict and the entry of a judgment.*

*Id.* at 336 (citations omitted) (emphasis added). In this case the settlement agreement conclusively resolved the dispute. At the time of Benjamin's death all that remained for final judgment to obtain was for the court to approve the settlement and enter judgment.[3] This is similar to the period

---

because several details of the medical trust had yet to be finalized at the time of Benjamin's death, including the identity of the trustee and the purchase price of the annuities. We disagree. The material elements of the trust were final when the settlement agreement became binding. As the district court noted, the trust provided for monthly payments to Benjamin's parents, payment of reasonable and necessary medical expenses, payment of respite care, payment of transportation costs, the purchase of a van, alteration to the Reeds' home, and the purchase of medical equipment. Moreover, section X of the Stipulation for Compromise Settlement, prepared by the government as a manifestation of the agreement between the parties, provided that the parties were under the following duties with respect to the settlement agreement:

> to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Stipulation for Compromise Settlement, and which are not inconsistent with its terms.

Given this clause, the terms of the trust that have not been finalized are not essential terms whose omission defeats the entire agreement.

*See Robbie v. City of Miami*, 469 So.2d 1384 (Fla.1985).

3. Florida law requires court approval of all settlements involving a minor for the settlement to be effective. Fla.Stat. § 744.387(3)(a). At the time of Benjamin's death his parents had executed an affidavit requesting court approval of the settlement but the settlement had not yet been submitted for approval. The fact that the court did not approve the settlement before Benjamin's death does not make the agreement any less binding on the government. The statute requiring court approval is designed for the protection of minors. *See Nixon v. Bryson*, 488 So.2d 607, 609 (Fla.Dist.Ct.App.), *review denied*, 494 So.2d 1152 (Fla.1986). Accordingly, only the failure of the agreement to protect the interests of the minor constitutes a legitimate basis for refusal to approve the settlement under this statute. *See Bullard v. Sharp*, 407 So.2d 1023, 1024 (Fla.Dist.Ct.App.1981). Nor could the government rescind the agreement before it was submitted for court approval. Once an agreement to settle is reached, one party may not unilaterally repudiate it. *See Gunn Plumbing, Inc.*, 252 So.2d at 4; *see also Harris*, 374 F.2d at 35; *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir.1970); *Hannon v. Hannon*, 426 F.2d 771, 772 (4th Cir.1970).

882

between the return of a verdict and the entry of judgment. As the *Variety* court noted, the death of the plaintiff during such a period will not abate the action. We thus are convinced that a Florida court would conclude that the appellees' cause of action did not abate because the action already had been settled when Benjamin died.

■ The final issue is appellees' cross-appeal from the district court's denial of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, for appellees' efforts to enforce the settlement agreement. The Act provides that "a court shall award to a prevailing party other than the United State fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* § 2412(d)(1)(A). The district court did not abuse its discretion in finding that the government's position was substantially justified, especially in light of the difficult issues of law involved in this case. Accordingly, the judgment of the district court is AFFIRMED.