792 So.2d 502 (2001)
Brenda BROWN, Douglas Taibl, and Howard Taibl, as Co-Personal Representatives of the Estate of Jeffrey Taibl, Deceased, Appellants,
v.
Sanford A. KAUFMAN, M.D., Appellee.
No. 4D00-1361.
District Court of Appeal of Florida, Fourth District.
May 16, 2001.
Deborah A. Sawyer, Fort Pierce, and Janice V. Fisher of the Law Office of Fisher & Associates, P.A., Fort Pierce, for appellants.
Janis Brustares Keyser of Gay, Ramsey & Warren, P.A., West Palm Beach, for appellee.

ON MOTION FOR REHEARING
STEVENSON, J.
Appellants, co-personal representatives of the estate of Jeffrey Taibl, brought suit against appellee, Dr. Sanford Kaufman, after Taibl committed suicide while a patient at Savannas Hospital.[1] Dr. Kaufman was the psychiatrist assigned to treat Taibl and, in addition, was under contract with Savannas Hospital to serve as the "Unit *503 Chief" of the Dual Diagnosis Unit where Taibl was being treated. Appellants alleged in count I of the complaint that Dr. Kaufman was negligent in treating Taibl. In count II, appellants alleged that, in his capacity as the "Unit Chief" of the Dual Diagnosis Unit, Dr. Kaufman fell below the standard of care in providing medical care to Taibl. A jury found in favor of the defendant as to count I, and the trial judge granted Dr. Kaufman's motion for directed verdict as to count II. As we will explain below, we find that the trial court erred in entering the directed verdict as to count II.
A motion for directed verdict should be granted only when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ as to the existence of a material fact and that the movant is entitled to judgment as a matter of law. See Briscoe Enters. Ltd., of Fla. III v. Palm Beach County, 623 So.2d 560 (Fla. 4th DCA 1993). If there is any evidence to support a possible verdict for the non-moving party, a directed verdict is improper. See Gold, Vann & White, P.A. v. DeBerry, 639 So.2d 47, 51 (Fla. 4th DCA 1994) (quoting Townsend v. Ward, 429 So.2d 404, 407 (Fla. 1st DCA 1983)).
On January 18, 1996, Taibl hung himself with a bed sheet in his Savannas Hospital room. Dr. Kaufman was not working at the time of Taibl's death. Taibl had been placed on a fifteen-minute suicide check schedule, requiring someone to check on him every fifteen minutes. Contrary to his fifteen-minute schedule, Taibl was left alone in a closed room for approximately thirty to forty-five minutes. At trial, appellants presented testimony that, where required, fifteen-minute suicide checks were not being stringently and routinely performed in the unit and that there was a laxness on the part of the staff in performing some of the other required protocols for suicide prevention. There was testimony that Dr. Kaufman knew, or should have known, of these deficiencies and, in certain instances, encouraged them. Appellants presented expert testimony that Dr. Kaufman failed to properly exercise his duties as Unit Chief of the Dual Diagnosis Unit by, among other things, failing to make sure that the fifteen-minute suicide checks were routinely performed (such as by having regular meetings with the staff emphasizing the importance of the fifteen-minute checks, performing unannounced spot-checks, etc.) and in failing to take any steps to ensure that other suicide prevention protocols in the unit were being followed by the staff.
Appellants' claim is distinguishable from the "captain of the ship" line of cases where the courts have held physicians liable for the acts of other staff members under their direct control and supervision at the time of the alleged negligent care. See Vasquez v. Bd. of Regents, 548 So.2d 251 (Fla. 2d DCA 1989); Vargas v. Dulzaides, 520 So.2d 306 (Fla. 3d DCA 1988). "The most familiar example of this process occurs in the operating room where each of the attending personnel comes under the authority of the surgeon as the `captain of the ship.'" Variety Children's Hosp., Inc. v. Perkins, 382 So.2d 331, 334-35 (Fla. 3d DCA 1980).
In support of the directed verdict, appellee relies on Variety Children's Hospital, Inc. There, a physician performed an uneventful surgery on a four-month-old boy. After the surgery, the physician left the hospital, and the boy remained in the exclusive care of the nurses and residents employed by the hospital. See 382 So.2d at 333. Due to the staff's negligent care, the boy sustained irreversible brain damage. See id. The boy's parents sued the hospital and the physician, basing their *504 claim on the negligence of the hospital staff. The physician was not an employee of the hospital but rather was a private pediatric and thoracic surgeon using the hospital's facilities. The Third District stated:
It is a fundamental rule that the respondeat superior doctrine applies only when the alleged master has the ability and authority to direct and control the pertinent acts of the employee. Based upon this doctrine, the courts have unanimously held that in a post-surgical situation such as this one, the hospital and not the physician is liable for the acts of its employees.
Variety, 382 So.2d at 335 (citations omitted).
Appellee points out that, like the physician in Variety, Dr. Kaufman was not present at the time of the staff's alleged negligent acts and argues that, since the staff were not his employees, he should not be held responsible for their actions. We find the instant case distinguishable from Variety in a number of meaningful ways. First and foremost, Dr. Kaufman had an independent contract with the hospital declaring him "Unit Chief" of the ward where Taibl was being treated.[2] Second, expert testimony concerning the proper functions and duties of a unit chief indicated that Dr. Kaufman was negligent in the performance of those responsibilities, which, according to the expert, contributed to the chain of events leading to Taibl's death. Appellee maintains that count II is based on either a "captain of the ship" or a respondeat superior theory with appellants attempting only to hold Dr. Kaufman vicariously liable for the misfeasance of the unit's staff. This is a crucial misreading of the complaint; count II of appellants' lawsuit against Dr. Kaufman is also based on asserted negligent actions that Dr. Kaufman himself committed which allegedly contributed to Taibl's death. Because there was at least some competent evidence upon which the jury could have lawfully found for the plaintiffs, we must reverse the directed verdict.
Affirmed in part, reversed in part, and remanded.
DELL and GROSS, JJ., concur.
NOTES
[1] We withdraw the original opinion issued on March 28, 2001, and substitute the following in its place. We grant rehearing only to clarify that the amended complaint deleted the Savannas Hospital as a defendant and left Dr. Kaufman as the sole defendant.
[2] Kaufman's contract with Savannas Hospital provided that his role as Unit Chief of the Dual Diagnosis Unit included the responsibility to "[a]ssist in quality assurance activities by monitoring the quality of care of any patient residing on his unit and by intervening in the care of any patient whose care does not meet standards or fall within established program parameters." Additionally, Kaufman was responsible for providing "supervision of the Team Leader and any and all other physicians providing care to patients in the unit."