GATES, MICHAEL, L., Associate Judge.
This is an appeal from the trial court’s order granting a directed verdict finding the defendant, South Florida Trotting Center, Inc., an equine sponsor, not liable for injuries suffered by plaintiff, Myles McNichol, in a horse related accident by reason of the immunity afforded to equine sponsors by section 773.02, Florida Statutes and assumption of the risk. Plaintiff contends the trial court erred in ignoring the negligence exception provided in section 773.03, Florida Statutes, which raises issues of fact. We agree and reverse.
The defendant’s training track was used to train horses for harness racing. In August and September 2004, the track was impacted by a series of tropical storms and a hurricane. After the storms, defendant used a road grader to push dirt from the track into the inside apron, creating a large mound of dirt (approximately 2-2 ½ feet tall) around the entire inside of the track. The dirt mound remained for some period of time. The plaintiff was injured when the horse he was training reacted to the sight or sound of a vehicle adjacent to the track. The horse bolted across the *255 track and ran into the dirt mound causing plaintiff to be ejected from his jog cart and injured.
The plaintiff filed an action against the defendant, alleging it breached its duty of care and was negligent by allowing the dirt mound to be placed on the inside edge of the track. The defendant responded that section 773.02 provided it with absolute immunity for injuries resulting from the inherent risks of equine activities. Plaintiff contended section 773.03(2)(d) provides an exception to an equine activity sponsors immunity when the sponsor “[cjommits an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances. ...”
The evidence at trial indicated the presence of the dirt mound was not a normal condition for training tracks, and that the dirt mound was a hazard not associated with training horses. The owner of the Trotting Center testified there was no legitimate purpose in maintaining the dirt mound around the inside perimeter of the track. The plaintiff testified that he could not regain control of the horse because the dirt mound blocked access to a grass infield, which was a safe place to go to when a horse was out of control. The general manager of the Trotting Center also testified that it was not reasonably prudent to maintain the mound on the inside of the track for any extended period of time.
At the conclusion of plaintiff’s case, defendant moved for a directed verdict alleging plaintiff failed to establish a prima, facie ease of negligence. The plaintiff argued issues of fact had been raised pertaining to the negligence exception contained in section 773.03 which should be determined by the jury. The trial court, relying on section 773.02, found defendant as an equine sponsor was not liable for plaintiffs injuries because the injuries resulted from the inherent risk of equine activities. Alternatively, the trial court found the plaintiff assumed the risk of an open and obvious condition. The trial court granted the directed verdict.
“A motion for directed verdict should be granted only when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ as to the existence of a material fact and that the movant is entitled to judgment as a matter of law.” Brown v. Kaufman, 792 So.2d 502, 503 (Fla. 4th DCA 2001). If there is any evidence to support a possible verdict for the non-moving party, a directed verdict is improper. Id. In negligence cases, courts caution against a motion for a directed verdict. Regency Lake Apartments Assocs., Ltd. v. French, 590 So.2d 970, 972 (Fla. 1st DCA 1991).
Section 773.01(6) defines “Inherent risks of equine activities” as:
[Tjhose dangers or conditions which are an integral part of equine activities, including, but not limited to:
(a) The propensity of equines to behave in ways that may result in injury, harm, or death to persons on or around them.
(b) The unpredictability of an equine’s reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals.
(c) Certain hazards such as surface and subsurface conditions.
(d) Collisions with other equines or objects.
(e) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his or her ability.
(Emphasis added).
Section 773.02 provides that:
*256 Except as provided in. s. 773.03, an equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities and, except as provided in s. 773.03, no participant nor any participant’s representative shall have any claim against or recover from any equine activity sponsor, equine professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.
(Emphasis added).
The jury was presented with evidence that the defendant created a two-foot mound that blocked access from the track to a grass infield. The grass infield was used as a safe spot for trainers to go to when a horse was out of control. The presence of the dirt mound was not a normal condition for training tracks, and the dirt mound was a hazard not associated with training horses. The plaintiff testified that he would never expect to see this type of dirt mound on a training track. From the evidence presented, the jury could have found the dirt mound was not an integral part of the race track or training horses and therefore not an inherent risk of equine activities. Thus, when viewing “the evidence and all inferences of fact in a light most favorable to the nonmoving party,” there was evidence to support a verdict in favor of the plaintiff that the placement of the dirt mound was not an inherent risk of equine activities as defined by section 773.01(6). See e.g. LeNoble v. City of Fort Lauderdale, 663 So.2d 1351, 1352 (Fla. 4th DCA 1995) (stating that the jury must determine whether the placement of a pitching rubber is a risk inherent in the game of fast pitch softball).
Because evidence was presented at trial to establish that this mound was a hazard not associated with training horses, the issue of whether the mound was an inherent risk should have been presented to the jury. See e.g. Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309, 1311 (Fla. 1986) (holding that riding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing).
Additionally, Section 773.03 provides:
(2) Nothing in s. 773.02 shall prevent or limit the liability of an equine activity sponsor, an equine professional, or any other person if the equine activity sponsor, equine professional, or person:
[[Image here]]
(d) Commits an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances or that constitutes willful or wanton disregard for the safety of the participant, which act or omission was a proximate cause of the injury.
The Trotting Center’s owner and general manager testified that the mound was a hazard, that it created a dangerous condition, and that it was not good custom and practice to leave the mound in place for any extended period of time. The general manager further testified that it was not reasonably prudent to maintain the mound on the inside of the track for any extended period of time. There is no immunity for equine activity when the claim is based on “an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances.” § 773.03(2)(d).
The jury could have found from the evidence presented that the negligence exception applied if it determined that the defendant had a specific responsibility to act as a reasonably prudent person by removing the mound. See e.g. McGraw v. *257 R & R Invs., Ltd., 877 So.2d 886, 890 (Fla. 1st DCA 2004) (finding that the omission of an equine sponsor in not posting a sign required in section 773.04 is one that a “ ‘reasonably prudent person would not have done or omitted under the same or similar circumstances.’”) (quoting section 773.03(2)(d)).
Finally, the trial court found plaintiffs claim was barred because he expressly assumed the risk of injury. The doctrine of express assumption of the risk totally bars recovery when the injured party consented to a known risk. See Kuehner v. Green, 436 So.2d 78 (Fla.1983); see also Van Tuyn v. Zurich Am. Ins. Co., 447 So.2d 318, 320 (Fla. 4th DCA 1984). Express assumption of the risk includes “express contracts not to sue for injury ... as well as ... where one voluntarily participates in a contact sport.” Blackburn v. Dorta, 348 So.2d 287, 290 (Fla.1977).
In contrast, implied assumption of the risk includes aberrant conduct in non-contact sports and may not be invoked as a total bar to recovery. Mazzeo v. City of Sebastian, 550 So.2d 1113, 1116-17 (Fla. 1989); see also Kendrick v. Ed’s Beach Serv., Inc., 577 So.2d 936, 938 (Fla.1991).
In this case, the plaintiffs conduct is properly characterized as implied assumption of the risk. As such, the plaintiffs conduct must be evaluated by the jury under principles of comparative negligence. See Kendrick, 577 So.2d at 938 (holding that a diver who was injured when he dove into a swimming pool could recover from the defendant, even if he intentionally assumed the risk despite knowing of the dangerous conditions); Mazzeo, 550 So.2d at 1117 (holding that a swimmer’s “foolhardy” conduct of diving into shallow water was implied assumption of the risk and would have to be evaluated under principles of comparative negligence).
Even if harness racing is a contact sport, the defense of express assumption of the risk only bars recovery for those risks inherent in the contact sport itself. See Ashcroft, 492 So.2d at 1311 (holding that there was no express assumption of the risk because “[rjiding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing”). Here, the jury should have been able to determine whether the placement of the mound was an inherent risk of equine activity.

Reversed and Remanded.

POLEN, J., concurs.
MAY, J., dissents with opinion.