RAY, J.
Taylor Morrison Services, Inc., Appellant, challenges a final judgment ruling that it was an unlicensed contractor for the construction of a home for Carol Ecos and Susan Bessing, Appellees. To be considered licensed with respect to this contract, Appellant had to “have a primary or secondary qualifying agent in accordance with *1288 [chapter 489, part I, Florida Statutes] concerning the scope of the work to be performed under the contract” on the effective date of the contract. § 489.128(1), Florida Statutes (2008). We reverse because Appellant met this requirement.
Effective February 13, 2004, the parties entered into an agreement for the construction and purchase of a home. After closing on the home and discovering defects, Appellees sued Appellant for negligence by an unlicensed contractor, seeking treble damages and attorneys’ fees under section 768.0425(2), Florida Statutes (2003). The parties stipulated that construction defects in the home caused compensatory damages in the amount of $200,000 and proceeded to a non-jury trial on Appellees’ request for treble damages and attorneys’ fees.- The parties’ relevant arguments before the trial court centered on whether Appellant was an “unlicensed contractor” within the meaning of section 489.128(1), which provides that “[a] business organization is unlicensed if the business organization does not have a primary or secondary qualifying agent in accordance with this part concerning the scope of the work to be performed under the contract.” Section 489.128(l)(c) further instructs that “a contractor shall be considered unlicensed only if the contractor was unlicensed on the effective date of the original contract or the work, if stated therein, or if not stated, the date the last party to the contract executed it, if stated therein.”[1]
On the effective date of the contract at issue, records of the Department of Business and Professional Regulation Construction Industry Licensing Board (the Department) listed four contractors as “qualifying agents” -for Appellant. One was Lisa Marie Steiner, who had resigned from her employment with Appellant a few weeks earlier, and another was Douglas Guy, a duly licensed certified building contractor who remained employed with Appellant in various capacities throughout the contract period. Guy attested that he was also a primary qualifying agent for Appellant throughout this period, including on the contract date.
Approximately two and a half months after the parties entered into the contract, someone applied for the building permit for Appellees’ home. The application indicates that Steiner signed before a notary as the “licensed contractor” for the project on behalf of Appellant. Steiner, however, testified that she had no involvement with this project and doubted the signature’s authenticity. In any event, although she had signed blank applications for building permits while employed with Appellant, she did not authorize Appellant to pull the permit for this project using her license. It was undisputed that Steiner did not supervise the construction, and after considering evidence concerning the manner in which the project was carried out, the court found that no licensed contractor actually did.
Focusing on the apparent fraud in the permit application and the lack of construction supervision, the trial court ruled that Appellant was unlicensed. The trial court interpreted section 489.128(l)’s licen-sure-status language as requiring a business organization (1) to have a primary or secondary qualifying agent who is charged with directing, supervising, managing, and controlling the construction of the house that is the subject of the contract and (2) *1289 to have the licensed individual who is charged with directing, supervising, managing, and controlling the construction of the house pull the building permit. Applying this interpretation, the trial court found that Appellant “acted as an unlicensed contractor when it constructed [Ap-pellees’] house” because (1) an unknown person or persons obtained the building permit using Steiner’s license -without her permission and (2) Appellant built the house “without the direction, supervision, management, and control of the licensed contractor listed on the building permit or any other licensed contractor.”
The correctness of the trial court’s order turns on an issue of statutory construction, which is subject to de novo review. Diamond Aircraft Indus., Inc. v. Horowitch, 107 So.3d 362, 367 (Fla.2013). Proper statutory analysis begins with the plain language of the statute, Koile v. State, 934 So.2d 1226, 1230 (Fla.2006), which is to be considered in context, Variety Children’s Hosp., Inc. v. Perkins, 382 So.2d 331, 337 (Fla. 3d DCA 1980), and not construed in a way that renders any portion of the statute meaningless, Mendenhall v. State, 48 So.3d 740, 749 (Fla.2010). When the language is unclear or ambiguous, it is appropriate to apply established principles of interpretation to discern the meaning of the governing text. Koile, 934 So.2d at 1231.
To be considered licensed under section 489.128(1), a business organization must have a “qualifying agent in accordance with this part concerning the scope of the work to be performed under the contract,” and this determination must be made as of the contract’s effective date when, as here, that date is known. Section 489.128(l)(c) precludes considering events that occur after that date, by instructing that a contractor be considered unlicensed “only if’ the contractor is unlicensed at that specific time. Contrary to this date requirement, the trial court’s application of section 489.128(1) depended entirely on events that occurred after the effective date of the contract, namely the permitting of the project and its supervision, or lack thereof.
In support of the trial court’s analysis, Appellees argue that the statutory definitions of “primary qualifying agent” and “secondary qualifying agent” require consideration of the actual permitting and supervision of a project to determine licen-sure under section 489.128(1). Those terms are defined in section 489.105, Florida Statutes (2003), as follows:
(4) “Primary qualifying agent” means a person who possesses the requisite skill, knowledge, and experience, and has the responsibility, to supervise, direct, manage, and control the contracting activities of the business organization with which he or she is connected; who has the responsibility to supervise, direct, manage, and control construction activities on a job for which he or she has obtained the building permit; and whose technical and personal qualifications have been determined by investigation and examination as provided in this part, as attested by the department.
(5) “Secondary qualifying agent” means a person who possesses the requisite skill, knowledge, and experience, and has the responsibility to supervise, direct, manage, and control construction activities on a job for which he or she has obtained a permit, and whose technical and personal qualifications have been determined by investigation and examination as provided in this part, as attested by the department.
Appellees emphasize the language in both definitions stating that a qualifying agent “has the responsibility to supervise, direct, manage, and control construction activities *1290 on a job for which he or she has obtained the building permit” (or “a permit” in the case of a secondary, rather than primary, agent). Under Appellees’ view, when this language is applied to section 489.128(1), it requires a comprehensive analysis of a particular project, such that a business organization is not considered to “have a primary or secondary qualifying agent” with respect to a particular contract unless it can be said that -a licensed contractor actually obtained the permit for the work and adequately supervised it. Under this reasoning, a business organization’s licen-sure status, as determined by whether it has a qualifying agent, can change throughout the course of construction for a particular project.
Although the emphasized language might support Appellees’ analysis if it were to be considered in isolation, it is not sustainable when the terms “primary qualifying agent” and “secondary qualifying agent” are considered in the context of section 489.128(1)(c)’s date requirement. It cannot be known on the contract’s effective date whether the business organization will actually ensure compliance with the permitting and supervision requirements of chapter 489 with respect to the project.[2] Because that information is not fully developed until the project is complete, it does not answer the date-specific licensure inquiry required by section 489.128(1). In fact, relying on that information would require us to read the date requirement out of the statute, contrary to its plain language. As the remaining analysis shows, the licensure inquiry required under this section is much simpler than what Appellees suggest.
In addition to the date requirement, the modifier “concerning the scope of the work to be performed under the contract” provides important context for understanding the term “qualifying agent” in section 489.128(1). The requirement that a business organization have a qualifying agent “concerning the scope of the work to be performed under the contract” refers to the qualifying agent’s type of licensure, not to the agent’s actual performance with respect to a particular job or permit or even to an agent’s assignment to a particular contract. Section 489.128(1)(a)’s requirement that the business organization have a qualifying agent “concerning the scope of the work to be performed under the contract” means the business organization must have at its disposal a person who is recognized as a qualifying agent and licensed as an individual to perform the type of work addressed in the contract.
The context in which the term “qualifying agent” is used in section 489.128(1) indicates that this term refers to a person’s qualifications, individual licen-sure, and, insofar as the more detailed language of section 489.105(4) and (5) is concerned, his or her general job description. In consideration of the date requirement, the statutory definitions of “qualifying agent,” and the modifier “concerning the scope of the work to be performed under the contract,” we conclude that the licensure question under section 489.128(1) *1291 turns on whether the business organization is associated with a person licensed for the type of work to be performed under the contract as of the effective date of the contract, irrespective of whether that person ultimately obtains the permit and supervises the construction under the contract.[3]
Although the plain language of sections 489.128(1) and 489.105(4) and (5) is sufficient to establish this proposition, other portions of chapter 489, part I, read in pari materia[4] with these dispositive provisions confirm our understanding of the circumstances under which a business organization can be said to have a qualifying agent. Section 489.119(2) requires a business organization proposing to engage in contracting to “apply for a certificate of authority through a qualifying agent.” Section 489.119(3)(a) requires a qualifying agent to be registered or certified in order for his or her business organization to be “issued a certificate of authority in the category of the business conducted for which the qualifying agent is certified or registered.” The same subsection goes on to require a qualifying agent to inform the Department if he or she ceases to be affiliated with a business organization. Further, it requires the business organization to notify the Department if its only qualifying agent ceases to be affiliated with the organization. § 489.119(3)(a). With an exception not pertinent to this discussion, the business organization must then cease contracting until it employs a new qualifying agent. § 489.119(3)(a). These provisions show that a person can be a qualifying agent in a general sense, even though the person has not obtained the permit for a particular job. In other words, chapter 489 recognizes “qualifying agent” as a position with respect to a business organization and not only as a position in relation to a specific project.[5]
When “qualifying agent” is considered in terms of a person’s individual licen-sure to perform regulated construction work and his official affiliation with a business organization, the evidence undisput-edly shows that Appellant had the required qualifying agent on the effective date of the contract. On that date, Appellant and Guy considered Guy to be a primary qualifying agent for Appellant, he had the requisite licensure to perform this function with respect to the house Appel-lees contracted to have built, and the Department’s records recognized him as a qualifying agent.[6] Although Appellant *1292 may have violated the law by building the home with a contractor other than the one whose name appears on the permit, by using Steiner’s license when she was not affiliated with the project, and by conducting the project with inadequate supervision, these transgressions did not retroactively render Appellant unlicensed within the meaning of section 489.128. Appellant’s apparent violations of the law occurred after the effective date of the contract. Thus, they are irrelevant to the narrow issue of whether Appellant was licensed on that date, and the penalty for Appellant’s violations of the law is not treble damages and attorneys’ fees under section 768.0425. Accordingly, we reverse and remand for entry of a final judgment consistent with this opinion.
•REVERSED and REMANDED.
WOLF and BENTON, JJ., concur.

. Section 489.12S(l)(c) provides, as a third alternative when the first two dates are not stated in the contract, that "the contractor shall be considered unlicensed only if the contractor was unlicensed on the first date upon which the contractor provided labor, services, or materials under the contract.”

. Not only will the supervision of any contracted-for project be incomplete on the effective date of the contract, in many cases, a contractor is prohibited from even applying for a building permit until qfter the contract is in effect. See § 489.127(4)(c), Fla. Stat. (2003) (prohibiting a contractor from applying for or obtaining a building permit for construction work unless the contractor or "business organization duly qualified by said contractor ... has entered into a contract to make improvements to, or to perform contracting at, the real property specified in the application or permit,” except where the contractor proposes to perform the work without compensation or on property owned by the contractor).

. The fact that a contractor is licensed does not insulate it from liability for problems arising during the permitting and construction process. Other provisions of chapter 489, part I, Florida Statutes, subject licensed contractors to penalties and sanctions for misconduct, including restitution, fines, and license revocation.

. "The doctrine of in pari materia is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature’s intent.” Fla. Dep't of State, Div. of Elections v. Martin, 916 So.2d 763, 768 (Fla.2005).

. This recognition of a person as a qualifying agent in a general sense, as opposed to being assigned as the qualifying agent on a particular job, is consistent with the Department’s understanding of the term "qualifying agent,” as reflected by its records listing the qualifying agents employed by Appellant during particular time frames. The Department considers those people qualifying agents regardless of whether they are assigned to a particular job at any given time.

.Even though Guy was not listed on the permit as the contractor, he was responsible as a primary qualifying agent for all of Appellant’s construction projects. § 489.1195(1)(a), Fla. Stat. (2003); Alies v. Dep’t of Prof'l Regulation, 423 So.2d 624, 626 (Fla. 5th DCA 1982). Whether he carried out this responsibility faithfully is a separate question from *1292 whether he could be considered a qualifying agent that Appellant had on the contract date, and one the trial court did not need to decide,