# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

Case No. 5D2023-1393
LT Case No. 2021-31491-CICI

———————————————————

SOUTH WILD OLIVE, LLC,

    Appellant,

    v.

TOTAL MAINTENANCE SERVICES,
LLC,

    Appellee.

———————————————————

On appeal from the Circuit Court for Volusia County,
Mary G. Jolley, Judge.

Allison Morat, of Bitman O'Brien & Morat, PLLC, Lake Mary, for
Appellant.

Brian D. Gottlieb and Gabriela A. Hidalgo, of RTRLAW, LLP,
Fort Lauderdale, for Appellee.

May 17, 2024

JAY, J.

    This is an appeal from the trial court's denial of a motion
seeking attorney's fees under section 57.105(1), Florida Statutes
(2021). Because that statute mandates an award of reasonable
attorney's fees when a losing party's counsel knowingly raises
claims or defenses that are legally unsupported, we reverse.

## I.

South Wild Olive, LLC ("Appellant") owned a house in Volusia County. In August 2020, it hired Total Maintenance Services, LLC ("TMS") to remodel the house. The parties signed an agreement that featured the TMS logo and identified TMS as "Contractor." When Appellant did not pay certain invoices, TMS sued for breach of contract and to foreclose a construction lien.

In its answer, Appellant alleged that because TMS was an unlicensed contractor, it "was prohibited by law from entering [into] the contract," "performing . . . services," and "seeking payment for . . . services." Appellant also raised several counterclaims based on the fact that TMS was "legally incapable of providing" contracted services because TMS was not licensed. In response to Appellant's counterclaims, TMS averred that it had no liability for working without a license because TMS "is a fully licensed contractor."

Appellant moved for sanctions against TMS and its counsel, RTRLAW, LLP ("Law Firm"). Appellant identified two sanctionable pleadings: TMS' complaint and its answer to Appellant's counterclaims. Appellant argued that because TMS was unlicensed when the parties formed their agreement, "TMS knew, or should have known that it could not, and cannot ever prevail on its claim for breach of contract, nor its affirmative defense that TMS is a licensed contractor." Law Firm responded that TMS "advised that it was able to proceed with the contract" because Appellant knew that TMS was unlicensed and that Vulcan Builders, LLC was the project's general contractor.

The trial court held a hearing on Appellant's motion for sanctions. Before the evidentiary portion of the hearing, Appellant contended that it "was subjected to a year of reckless and meritless litigation" despite notifying Law Firm "repeatedly" about the "unsubstantiated" nature of TMS' claims. Law Firm indicated that "the whole defense here" was that it relied on the statements of its client, TMS. Law Firm acknowledged that it knew TMS "wasn't licensed when [TMS] performed [under the agreement]." However, "by the time" that Law Firm answered Appellant's counterclaims,

2

TMS was licensed, so in Law Firm's view, asserting that TMS is a licensed contractor "was a true statement."

In his testimony at the hearing, Erik De L'Etoile—the attorney who filed the TMS pleadings—agreed that "each of [Appellant's] defenses, the answer and the counterclaim, all revolved around the claim that TMS was an unlicensed contractor[.]" He also admitted that he knew that TMS was unlicensed when he filed the breach of contract complaint:

> Q: And at the time you filed the complaint, did you know TMS was not a licensed contractor?
>
> A: Yes.

De L'Etoile testified that TMS received its license on February 2, 2022, the same day he filed the answer to Appellant's counterclaims. That answer included the defense that TMS "is a fully licensed contractor." De L'Etoile admitted that "obviously," this defense "should have had some qualifying language" about when TMS became licensed. He described the defense as simply "missing a few words that should have been included." However, he acknowledged that TMS' after-the-fact licensure was legally irrelevant:

> Q: And the reason that is is because you know under the law, the real inquiry, the real relevant fact is whether or not the party was licensed at the time of contract, right?
>
> A: Yes.

De L'Etoile testified that he was informed a general contractor was overseeing TMS' work. On his last day working for Law Firm, De L'Etoile filed a motion for leave to amend TMS' answer to Appellant's counterclaims. That motion was never heard by the court. Regardless, the proposed amendment merely stated that TMS "hired and utilized fully licensed contractors." De L'Etoile conceded that this proposed amendment "did not include language saying [TMS] was being supervised by a licensed contractor." He indicated that he should have included "a couple extra words"

clarifying that TMS was working "under a general contractor," but "those words never made it into" the proposed amendment. De L'Etoile did not try to amend TMS' complaint because he "didn't think there were any issues with the complaint."

Before the end of the hearing, the court suggested that Law Firm engaged in "gamesmanship" and had gotten "cutesy" in its pleadings. The court stated that the facts were "bad." Despite that, the court issued an order denying the motion for sanctions. The court reasoned:

> Here, based upon the totality of the facts, this Court cannot find that [TMS] lacked any reasonable basis to proceed with its claim as there was sworn evidence that [Appellant] was aware [of] the status of the parties before signing the contract, but then defended and filed a counterclaim on the ground that the work was not performed by a licensed contractor. **While the failure of [TMS] to amend its pleadings to more accurately set forth these facts is glaring**, this Court cannot find that the action from the outset or thereafter was wholly untenable.

(Emphasis added).

## II.

An appellate court reviews a trial court's denial of attorney's fees under section 57.105(1) for an abuse of discretion. *Paul v. Avrahami*, 216 So. 3d 647, 649 (Fla. 4th DCA 2017). To the extent the trial court's ruling was based on an issue of law, the standard of review is de novo. *Id.*

"The central purpose of section 57.105 is, and always has been, to deter meritless filings and thus streamline the administration and procedure of the courts." *Mullins v. Kennelly*, 847 So. 2d 1151, 1154 (Fla. 5th DCA 2003). Subsection (1) of the statute provides:

4

(1) Upon the court's initiative or motion of any party, the court **shall** award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

(a) Was not supported by the material facts necessary to establish the claim or defense; or

(b) Would not be supported by the application of then-existing law to those material facts.

§ 57.105(1), Fla. Stat. (emphasis added).

Here, the trial court cited one reason for not imposing sanctions: the existence of evidence suggesting that Appellant knew TMS was unlicensed when the parties formed their agreement. In the court's view, this gave TMS a reasonable basis to proceed with its claim. Thus, while the court found there was "glaring" imprecision in TMS' pleadings, the court also found that TMS' cause was not "wholly untenable." This analysis is out of step with Florida law, under which it is irrelevant if Appellant knew that TMS was unlicensed.

"As a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor." § 489.128(1), Fla. Stat. (2020). The Fifth District has rejected the notion that an unlicensed contractor can enforce an agreement when the other party knew the contractor was unlicensed. *See Earth Trades, Inc. v. T & G Corp.*, 42 So. 3d 929, 930 (Fla. 5th DCA 2010). This holding was based on the text of section 489.128, which the Legislature amended in 2003 to clarify that a party *other than the unlicensed contractor* can enforce the agreement. *See id.*; § 489.128(3), Fla. Stat. ("This section shall not affect the rights of

5

parties other than the unlicensed contractor to enforce contract, lien, or bond remedies."). Prior to the amendment, some courts had interpreted the statute "to preclude a party from enforcing a contract against an unlicensed contractor (or its bonding company), where that party had knowledge of the lack of a license." *Earth Trades, Inc.*, 42 So. 3d at 930.

The Supreme Court of Florida ultimately agreed with the Fifth District's analysis. *See Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580 (Fla. 2013). The Supreme Court held that "[t]he district court in *Earth Trades* correctly concluded that the defense that parties to a contract are *in pari delicto** was not available to the unlicensed contractor governed by section 489.128, Florida Statutes." *Id.* at 587. "Thus, even if proven, the other party's knowledge is insufficient as a matter of law to place the parties *in pari delicto*." *Id.*

Given these authorities, Appellant's purported knowledge of TMS being unlicensed should not have influenced the trial court's thinking. Even if proven, Appellant's knowledge is irrelevant to the merits of TMS' claim. Therefore, the court's sole reason for denying sanctions—which was the possible viability of TMS' action—misses the mark.

Law Firm suggests other grounds for denying sanctions. None of those reasons are persuasive. For example, Law Firm contends that the licensed contractor defense to Appellant's counterclaims was accurate—if read literally. TMS became licensed on February 2, 2022. Law Firm maintains that it was legitimate for it to file a pleading—on the day TMS was licensed—stating that TMS "is a fully licensed contractor."

Leaving aside the strained reliance on the verb tense, "a contractor shall be considered unlicensed" if the contractor did not have a license "on the effective date of the original contract for the work, if stated therein, or, if not stated, the date the last party to the contract executed it, if stated therein." § 489.128(1)(c), Fla.

---

\* An *in pari delicto* defense alleges that the parties are equal wrongdoers. *See Earth Trades, Inc.*, 108 So. 3d at 581.

Stat. An unlicensed contractor's subsequent licensure is irrelevant. *See Taylor Morrison Servs., Inc. v. Ecos*, 163 So. 3d 1286, 1289 (Fla. 1st DCA 2015). Here, Appellant and TMS signed their agreement on August 7, 2020. Thus, alleging that "TMS is a fully licensed contractor" was misleading. Indeed, De L'Etoile agreed at the hearing that "under the law, the real inquiry, the real relevant fact is whether or not the party was licensed at the time of contract."

Law Firm also argues that "TMS had at least a *plausible* claim and defense to the application of § 489.128," which was that TMS worked under the supervision of Vulcan Builders, a licensed general contractor. Vulcan is absent from the parties' agreement, which displays TMS' logo and identifies TMS as "Contractor," not a subcontractor of Vulcan or any other entity. And when TMS sought to enforce the agreement, it never mentioned Vulcan in its pleadings. Even the proposed amendment to TMS' answer to Appellant's counterclaims is silent about Vulcan. Law Firm's assertion that its pleadings—which never reference Vulcan—had plausible merit—because of Vulcan—is baseless.

The bottom line is that Law Firm filed a breach of contract complaint for a contractor it knew to be unlicensed—even though the contract was unenforceable. *See* § 489.128(1), Fla. Stat. Law Firm compounded this error by filing an answer to Appellant's counterclaims that relied upon the unlicensed contractor's subsequent licensure—a complete irrelevancy under the law. *See* § 489.128(1)(c), Fla. Stat.; *Taylor Morrison Servs., Inc.*, 163 So. 3d at 1289. Based on these circumstances, sanctions were required. *See* § 57.105(1)(b), Fla. Stat. (providing "the court *shall* award a reasonable attorney's fee" to the prevailing party if "the losing party's attorney knew or should have known that a claim or defense . . . [w]ould not be supported by the application of then-existing law to those material facts" (emphasis added)). Accordingly, the trial court reversibly erred by not awarding fees. *See Suarez v. Bank of N.Y. Mellon Tr. Co.*, 325 So. 3d 205, 209 (Fla. 2d DCA 2021) (reversing the denial of fees in a case where "[a]t a minimum," counsel "should have known that the existing law precluded" the relief counsel requested, "particularly after being presented with relevant case law" by the opposing party); *Wells v. Halmac Dev., Inc.*, 189 So. 3d 1015, 1022 (Fla. 3d DCA 2016)

(reversing the denial of fees where "counsel knew or should have known" that his client had no "reasonable basis in law" to seek the remedy counsel requested and where the trial court's later determination that "counsel raised a colorable claim was erroneous as a matter of law").

III.

We reverse the trial court's denial of Appellant's fee motion as to Law Firm. *See* § 57.105(3)(c), Fla. Stat.; *Suarez*, 325 So. 3d at 209–10; *Wells*, 189 So. 3d at 1022. On remand, the trial court shall determine the appropriate amount of attorney's fees.

REVERSED and REMANDED.

EISNAUGLE and PRATT, JJ., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---